UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                        :

UNITED STATES OF AMERICA           :

                        :

        -v.-                 :       22 Cr. 684 (JLR)

                        :

BEVELYN WILLIAMS and        :
EDMEE CHAVANNES,          :

                        :

               Defendants.    :

                        :

---------------------------------------------------------------x

## THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE INDICTMENT

 

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Jamie Bagliebter
Assistant United States Attorney
    -Of Counsel-

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................................ 1

BACKGROUND ..................................................................................................................... 1

DISCUSSION ......................................................................................................................... 3

    I.   Legal Framework ......................................................................................................... 3

    II.   Argument..................................................................................................................... 5

        A.   The Defendants' Selective Prosecution Claim Is Meritless ........................................ 5

            1.   Applicable Law........................................................................................................ 5

            2.   Discussion.............................................................................................................. 7

        B.   The FACE Act Does Not Exceed Commerce Clause Authority ................................ 11

        C.   The FACE Act Remains Valid After *Dobbs*................................................................. 13

        D.   The FACE Act is a Content-Neutral Law.................................................................. 15

            1.   Applicable Law........................................................................................................ 15

            2.   Discussion.............................................................................................................. 16

        E.   The Indictment Does Not Violate the Religious Freedom Restoration Act or the Free Exercise Clause of the First Amendment.................................................................. 20

            1.   The FACE Act Does Not Violate The Religious Freedom Restoration Act.............. 21

            2.   The FACE Act Does Not Violate the Free Exercise Clause ..................................... 23

CONCLUSION....................................................................................................................... 24

## TABLE OF AUTHORITIES

**Cases**

*American Life League, Inc. v. Reno*, 47 F.3d 642 (4th Cir. 1995)........................................ passim

*Brokamp v. James*, 66 F.4th 374 (2d Cir. 2023) ............................................................. 24

*Cheffer v. Reno*, 55 F.3d 1517 (11th Cir. 1995); ........................................................... passim

*Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520 (1993)....................... 28

*City of Austin v. Reagan National Advertising of Austin LLC*, 142 S. Ct. 1464 (2022) ............... 24

*Cobb v. Pozzi*, 363 F.3d 89 (2d Cir. 2004) ..................................................................... 7

*Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (2022)......................................... passim

*GEFT Outdoor LLC v. City of Westfield*, 39 F.4th 821, 925 (7th Cir. 2022) ............................ 24

*Hoffman v. Hunt*, 126 F.3d 575 (4th Cir. 1997);................................................... 15, 17, 21

*Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47 (2d Cir. 2021)................................ 16

*Levine v. Lawrence*, No. 03-cv-1694, 2005 WL 1412143 (E.D.N.Y. June 15, 2005).................. 14

*McCleskey v. Kemp*, 481 U.S. 279 (1987) .................................................................... 13

*McCullen v. Coakley*, 573 U.S. 464 (2014) ........................................................ 19, 22, 24

*New York by James v. Griepp*, 11 F.4th 174 (2d Cir. 2021)................................................ 22

*New York v. Griepp*, 991 F.3d 81 (2d Cir. 2021)..................................................... 22, 23

*Norton v. Ashcroft*, 298 F.3d 547 (6th Cir. 2002)........................................................ passim

*Perez v. United States*, 402 U.S. 146 (1971) ................................................................ 15

*Reed v. Town of Gilbert*, 135 S. Ct. 2218 (2015)........................................................ passim

*Renton v. Playtime Theatres*, 475 U.S. 41 (1986) ......................................................... 19

*Roberts v. United States Jaycees*, 468 U.S. 609 (1985).................................................. 21

*Roe v. Wade*, 410 U.S. 113 (1973),................................................................. 17, 18

*Skoros v. City of New York*, 437 F.3d 1 (2d Cir. 2006) ................................................... 28

*Summit Health, Ltd. v. Pinhas*, 500 U.S. 322 (1991)..................................................... 15

*Terry v. Reno,* 101 F.3d 1414 (D.C. Cir. 1996) ........................................................ 5, 6

*Time Warner Cable Inc. v. F.C.C.*, 729 F.3d 137 (2d Cir. 2013) ....................................... 19

*Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622 (1994).................................................. 20

*United States v. Alameh*, 341 F.3d 167 (2d Cir. 2003) ................................................... 7

*United States v. Amer*, 110 F.3d 879 (2d Cir. 1997)...................................................... 29

*United States v. Armstrong*, 517 U.S. 456 (1996) ........................................... 6, 7, 10, 11

*United States v. Avenatti*, 433 F. Supp. 3d 552 (S.D.N.Y. 2020) ..................................... 13

*United States v. Bass*, 536 U.S. 862 (2002) .......................................................... 11, 13

*United States v. Bird*, 124 F.3d 667 (5th Cir. 1997) ..................................... 5, 15, 17, 21

*United States v. Brock*, 863 F. Supp. 851 (E.D. Wis. 1994)......................................... 26, 27

*United States v. Chem. Found., Inc.,* 272 U.S. 1 (1926)................................................... 6

*United States v. Dinwiddie*, 76 F.3d 913 (8th Cir. 1996) ............................................... passim

*United States v. Dinwiddie*, 885 F. Supp. 1286 (W.D. Mo. 1995) .................................... 26

*United States v. Fares*, 978 F.2d 52 (2d Cir. 1992)................................................. 7, 9, 13

*United States v. Freestone, et. al*, 23-cr-25-VMC-AEP (M.D. Fl.)....................................... 11

*United States v. Gregg*, 226 F.3d 253 (3d Cir. 2000) .................................................... passim

*United States v. Handy, et al.*, No. 22-096 (CKK), 2023 WL 4744057 (D.D.C. July 25, 2023) . 17
*United States v. Hedaithy*, 392 F.3d 580 (3d Cir. 2004) .................................................... 11
*United States v. Houck*, 22 Cr. 323, 2023 WL 144117 (E.D. Pa. Jan. 10, 2023) ................... 10, 11
*United States v. Lewis*, 517 F.3d 20 (1st Cir. 2008) ................................................... 9, 13
*United States v. Lopez*, 115 S. Ct. 1624 (1995). ......................................................... 14
*United States v. Moon*, 718 F.2d 1210 (2d Cir. 1983) .................................................... 7
*United States v. O'Brien*, 391 U.S. 367 (1968). ...................................................... 20, 25
*United States v. Olvis*, 97 F.3d 739 (4th Cir. 1996) ...................................................... 9
*United States v. Smith*, 231 F.3d 800 (11th Cir. 2000) ................................................... 9
*United States v. Soderna*, 82 F.3d 1370 (7th Cir. 1996) ........................................... passim
*United States v. Weslin*, 156 F.3d 292 (2d Cir. 1998), ............................................ passim
*United States v. Weslin*, 964 F. Supp. 83 (W.D.N.Y. 1997) .......................................... 26
*United States v. Wilson*, 73 F.3d 675 (7th Cir. 1995) ..................................... 15, 17, 21
*Universal Church v. Geltzer*, 463 F.3d 218 (2d Cir. 2006) .......................................... 28
*Wayte v. United States*, 470 U.S. 598 (1985) ......................................................... 6, 7
*Wisconsin v. Mitchell*, 508 U.S. 476 (1993) ............................................................ 21

**Statutes**

Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248(a) ......................................... passim
Religious Freedom Restoration Act .......................................................................... 25, 26
Title 18, United States Code, Section 371 ................................................................. 1, 3

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in response to the motion to dismiss the Indictment filed by defendants Bevelyn Williams and Edmee Chavannes (the "Motion" or "Mot."). The defendants argue that the Indictment, which charges them with violations of the Freedom of Access to Clinic Entrances Act, 18 U.S.C. § 248(a) ("Section 248" or the "FACE Act"), and Title 18, United States Code, Section 371, should be dismissed because: (i) the Government has engaged in selective prosecution; (ii) after *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (June 24, 2022), there is no federal right to abortion, and thus, the FACE Act is unconstitutional; (iii) the FACE Act is an impermissible content-based regulation of speech; (iv) the Indictment violates the Religious Freedom Restoration Act and Free Exercise Clause of the First Amendment; and (v) after *Dobbs*, the FACE Act exceeds Congress's power under the Commerce Clause. For the reasons that follow, and consistent with every other court to have considered these arguments, the Motion should be denied in its entirety.

## BACKGROUND

The defendants are founders of At the Well Ministries, Inc., a non-profit organization started in 2014. Indictment ¶ 1. One goal of At The Well Ministries was to prevent abortions in the United States. Indictment ¶ 1. In an effort to achieve this goal, the defendants engaged in both lawful and unlawful practices. The defendants' unlawful practices are the subject of the Indictment.

From at least 2019 through 2022, the defendants repeatedly agreed to and did use unlawful means—including force, threats of force and physical obstruction—to injure, intimidate, and interfere with individuals seeking to obtain lawful reproductive health services and with

individuals providing such services.  Indictment ¶ 2.  The defendants engaged in these acts around the country, including in New York, Georgia, Tennessee and Florida.  Indictment ¶¶ 3-5.

In 2019, the defendants began regularly protesting outside of a healthcare clinic in lower Manhattan that provided, among other things, abortion and reproductive health services (the "Health Center").  Indictment ¶ 3.  On June 19 and 20, 2020, the defendants led and participated in an organized protest outside the Health Center, which was publicized by At the Well Ministries.  Indictment ¶ 4.  During this two-day event, the defendants threatened and used force against patients and staff members at the Health Center, and blocked patients and staff members from accessing the clinic.  Indictment ¶ 4.  In one instance, Williams pressed her body against the door of the Health Center's patient entrance and refused to move, preventing a Health Center volunteer from entering the clinic.  Indictment ¶ 4(d).  As a Health Center staff member attempted to open the door for the volunteer, Williams leaned against the door, crushing the volunteer's hand.  Indictment ¶ 4(d).  The volunteer yelled, "She's crushing my hand," but Williams remained against the door, trapping and injuring the volunteer's hand.  Indictment ¶ 4(d).

In addition, at various times on June 19 and 20, 2020, the defendants stood directly in front of and blocked the entrances to the Health Center.  Indictment ¶ 4(c).  The defendants initially blocked the main entrance that was used by patients, causing patients to be diverted to the staff entrance.  Indictment ¶ 4(c).  In response, the defendants moved in front of the staff entrance and directed others to do so as well.  Indictment ¶ 4(c).

The defendants livestreamed their actions on Williams' social media account.  Indictment ¶ 4(a), (e).  For instance, on a livestreamed video from June 19, 2020, Williams stated, in part, "This is going to be a wonderful day.  We are going to terrorize this place.  And I want the manager

2

to hear me say that.  We are going to terrorize this place.  More people are coming."  Indictment ¶ 4(a).  In another livestreamed video from the following day, Williams stated, in part, "We gonna stand here and we ain't moving.  We not moving.  We're standing here, so I guess no women will be coming in for abortions today.  It's a warzone."  Indictment ¶ 4(e).

The defendants' actions were not limited to the Health Clinic in June 2020.  Indictment ¶ 5.  To the contrary, over the next two years, the defendants engaged in clinic invasions and protests at several locations throughout the country, including in Florida, Tennessee, Georgia, and New York.  Indictment ¶ 5.  During some of these events, the defendants either themselves used force, threats of force or physical obstruction in aid of their goals, or aided and abetted others who did so.  Indictment ¶ 5.  For example, in January 2022, the defendants participated in a protest outside of a reproductive health clinic in Fort Myers, Florida, during which the defendants directed other individuals to block the entrances to the clinic.  Indictment ¶¶ 5(a), (b), 8(c).  Then, in July and August 2022, the defendants participated in invasions of health centers in Nashville, Tennessee, Atlanta, Georgia, and Brooklyn, New York.  Indictment ¶ 5(c), (d), (e).

In December 2022, a grand jury returned Indictment 22 Cr. 684 (JLR), charging the defendants with violating the FACE Act and Section 371 in connection with their multi-year campaign to interfere with individuals seeking to obtain and provide lawful reproductive health services.

## DISCUSSION

### I.   Legal Framework

In 1994, Congress passed the FACE Act.  At issue in this case is subsection 248(a)(1) of the FACE Act, which makes it crime when a person:

3

> by force or threat of force, or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services.

18 U.S.C. § 248(a)(1). Section 248(a)(2) similarly addresses uses of force, threats of force or physical obstruction of a "person lawfully exercising or seeking to exercise the First Amendment right of religious freedom at a place of worship," and Section 248(a)(3) addresses intentional damage or destruction of a property that provides "reproductive health services" or "a place of religious worship." 18 U.S.C. § 248(a)(2), (3). The statute provides for both criminal penalties and civil remedies. 18 U.S.C. § 248(b), (c). The statute also includes rules of construction and a set of definitions. 18 U.S.C. § 248(d), (e). One rule of construction is that nothing in the statute shall be construed "to prohibit any expressive conduct (including peaceful picketing or other peaceful demonstration) protected from legal prohibition by the First Amendment to the Constitution). 18 U.S.C. § 248(d)(1).

The Second Circuit, and every other Court of Appeals to have considered the constitutionality of Section 248, has found Section 248 to be constitutional. *See United States v. Weslin*, 156 F.3d 292, 296-98 (2d Cir. 1998), *cert. denied,* 525 U.S. 1071 (1999); *see also Norton v. Ashcroft*, 298 F.3d 547, 556-59 (6th Cir. 2002); *United States v. Gregg*, 226 F.3d 253, 261-68 (3d Cir. 2000), *cert denied*, 532 U.S. 971 (2001); *United States v. Bird*, 124 F.3d 667, 678-684 (5th Cir. 1997), *cert. denied*, 523 U.S. 1006 (1998); *United States v. Soderna*, 82 F.3d 1370, 1373-76 (7th Cir. 1996), *cert. denied*, 519 U.S. 1006 (1996); *Terry v. Reno,* 101 F.3d 1414-22 (D.C. Cir. 1996), *cert. denied*, 520 U.S. 1264 (1997); *United States v. Dinwiddie*, 76 F.3d 913, 919-24 (8th Cir. 1996), *cert. denied*, 519 U.S. 1043 (1996); *Cheffer v. Reno*, 55 F.3d 1517, 1519-25 (11th Cir.

4

1995); *American Life League, Inc. v. Reno*, 47 F.3d 642, 647-53 (4th Cir. 1995), *cert. denied*, 516 U.S. 809 (1995).

As discussed in these cases, and as set forth in greater detail below, Section 248 derives its validity from Congress's power under the Commerce Clause. *See Weslin*, 156 F.3d at 296; *see also Norton*, 298 F.3d at 556; *Gregg*, 226 F.3d at 262-63; *American Life League*, 47 F.3d at 647 ; *Bird*, 124 F.3d at 672-82; *Terry*, 101 F.3d at 1415-18; *Soderna*, 82 F.3d at 1373-74; *Dinwiddie*, 76 F.3d at 920; *Cheffer*, 55 F.3d at 1519-21. Section 248 addresses violence, threats and obstruction that effects the interstate commercial market of reproductive health care services. *See e.g., Weslin*, 156 F.3d at 296 (finding that women travel interstate to obtain reproductive health services and violence, threats and physical obstruction can affect that travel); *Norton*, 298 F.3d at 556 (finding the effect of the activity targeted by Section 248 to be "unambiguously and directly economic).

## II.    Argument

### A.  The Defendants' Selective Prosecution Claim Is Meritless

The defendants first seek dismissal of the Indictment on the basis that the Government has engaged in selective prosecution. (Mot. at 1, 5-14). This argument should be denied.

#### 1.   Applicable Law

A defendant challenging the Government's decision to prosecute her bears a heavy burden. *United States v. Armstrong*, 517 U.S. 456, 463-64 (1996). Federal prosecutors retain "broad discretion to enforce the Nation's criminal laws." *Id*. at 464 (internal quotation marks omitted). "As a result, '[t]he presumption of regularity supports' their prosecutorial decisions and, 'in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.'" *Id.* (quoting *United States v. Chem. Found., Inc.,* 272 U.S. 1, 14-15 (1926)); *see*

5

*also, e.g.*, *Wayte v. United States*, 470 U.S. 598, 607 (1985).

To establish a claim of selective prosecution, a defendant must present "clear evidence" that the decision to prosecute not only (1) "had a discriminatory effect" but was also (2) "motivated by a discriminatory purpose." *Armstrong*, 517 U.S. at 465; *United States v. Alameh*, 341 F.3d 167, 173 (2d Cir. 2003); *United States v. Fares*, 978 F.2d 52, 59 (2d Cir. 1992); *United States v. Moon*, 718 F.2d 1210, 1229 (2d Cir. 1983).

With respect to the first of the two required prongs (i.e., discriminatory effect), a defendant must establish that "'others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against the defendant'" and that the defendant has been "'singled out.'" *Fares*, 978 F.2d at 59 (quoting *Moon*, 718 F.2d at 1229) (alteration incorporated); *see also Cobb v. Pozzi*, 363 F.3d 89, 110 (2d Cir. 2004) (same). With respect to the second of the two required prongs (i.e., discriminatory purpose), a defendant must establish that the Government's "selection of the defendant for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *Fares*, 978 F.2d at 59 (internal quotation marks omitted; alteration incorporated). This means more than that the Government acted with an "awareness of consequences." *Wayte*, 470 U.S. at 610 (internal quotation marks omitted). Rather, the Government must have "selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects." *Id.* (internal quotation marks omitted). Where a defendant "has not shown that the Government prosecuted [her] because of" her protected status or conduct, her claim fails. *Id.* (emphasis in original).

6

2. Discussion

a. *The Defendants Fail to Show that Similarly Situated Individuals Were Not Prosecuted*

As discussed above, with respect to the first prong, the defendants must present evidence that "others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against [her]." *Fares*, 978 F.2d at 59 (internal quotation marks omitted). "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." *United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008); *see also, e.g., United States v. Smith*, 231 F.3d 800, 811 (11th Cir. 2000) (the defendant "must establish that the government could prove beyond a reasonable doubt that someone else had engaged in the same type of conduct, committing the same crime in that or substantially the same manner"); *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996) ("[D]efendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them.").

Here, the defendants have not identified a single similarly situated individual who was not prosecuted for purposes of their selective prosecution claim. Instead, the defendants base their argument on the fact that almost thirty "pro-life individuals like Williams and Chavannes" were prosecuted for violations of Section 248, while the Government failed to prosecute all but two of "the more than 170 purported incidents of violence against pro-life pregnancy centers and churches" following the *Dobbs* decision. (Mot. 8-9). But the defendants cannot show discriminatory effect by pointing to other instances of Section 248 prosecutions against individuals with pro-life viewpoints. *See Armstrong*, 517 U.S. at 470 (finding that the defendants failed to

7

meet their burden because although the study they relied on showing that all defendants charged in the district with a particular offense during the preceding year were Black, defendants nonetheless "failed to identify individuals who were not [B]lack and could have been prosecuted for the offenses for which the respondents were charged, but were not so prosecuted"). Members of a specific group "cannot obtain constitutional immunity from prosecution by violating a statute more frequently than any other group." *Soderna*, 82 F.3d at 1376; *see also id.* ("It is true that [Section 248] is being *enforced* mainly against opponents of abortion. But this is because it is mainly they who are interfering with the provision of pregnancy-related services, just as it was Vietnam War protestors who burned their draft cards.").

Nor are the defendants' citations to news articles discussing attacks on pro-life centers which they claim are being ignored by the Government persuasive. (Mot. at 8). Critically, the defendants fail to assert how any specific case of violence or vandalism against the pro-life centers discussed in those articles would support a violation of Section 248(a)(1). Vague references to events where the only available facts are based on public news reporting are insufficient to show that any, let alone, all of the elements of Section 248(a)(1) could have been met but for the Government's failure to investigate or prosecute. *See e.g., United States v. Houck*, 22 Cr. 323, 2023 WL 144117, at *3 (E.D. Pa Jan. 10, 2023) (finding "[Defendant's] contention that the Government failed to prosecute 'violence against pro-life pregnancy centers and churches nationwide'" insufficient for selective prosecution claim). To meet their burden under *Armstrong*, the defendants must, at a bare minimum, allege a specific instance in which an identified pro-choice individual violated Section 248(a)(1) and was not investigated or prosecuted. *Armstrong*, 517 U.S. at 470; *United States v. Bass*, 536 U.S. 862, 863 (2002) (per curiam) ("Even assuming

8

that the *Armstrong* requirement can be satisfied by a nationwide showing (as opposed to a showing regarding the records of the decisionmakers in respondent's case), raw statistics regarding overall charges say nothing about charges brought against similarly situated defendants"); *United States v. Hedaithy*, 392 F.3d 580, 608 (3d Cir. 2004) (news articles demonstrating that much more cheating occurred than was prosecuted did not demonstrate that "*similarly situated* persons were treated differently"). The defendants' patchwork of citations to testimony and news articles fail to meet their burden.

Moreover, the facts do not support the defendants' argument. The Department of Justice has publicly announced federal investigations into a number of incidents against pregnancy resource centers, and upon further investigation, it is possible that some of these incidents will be charged under Section 248(a)(1). Indeed, in 2023, four defendants were charged in 2023 in the Middle District of Florida for vandalizing and spray-painting threats on a pregnancy resource center. *United States v. Freestone, et. al*, 23-cr-25-VMC-AEP (M.D. Fl.). These investigations and prosecutions directly contradict the defendants' claim that the Government is only prosecuting pro-life individuals based on their religion or viewpoint.

Because the defendants have failed to demonstrate that they are similarly situated to even a single perpetrator of a Section 248(a)(1) violation that the Government has refused to prosecute and, indeed, because the Department of Justice is investigating and has prosecuted potential violations of federal law, including Section 248, committed against pregnancy counseling centers associated with the defendants' professed pro-life views, they have not met the threshold for dismissal of the Indictment.

9

b.  *The Defendants Fail to Show Discriminatory Purpose*

Because the defendants have failed to show a discriminatory effect, their selective prosecution claim should be denied.  *See, e.g.*, *Bass*, 536 U.S. at 863; *Lewis*, 517 F.3d at 29 (holding that where no evidence of discriminatory effect was shown, "further consideration of the evidence pertaining to discriminatory intent would serve no useful purpose.").  But even if the defendants had made such a showing, their claim still fails because the defendants also cannot establish a discriminatory purpose.

To establish a discriminatory purpose, "a defendant must show that 'the government's discriminatory selection of [the defendant] for prosecution has been invidious or in bath faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights.'"  *United States v. Avenatti*, 433 F. Supp. 3d 552, 563 (S.D.N.Y. 2020) (quoting *Fares*, 978 F.3d at 59).  The defendants must show that a decision-maker selected or reaffirmed a particular course of action (at least in part) "*because of*, not merely in spite of, its adverse effects upon [an] identifiable group." *McCleskey v. Kemp*, 481 U.S. 279 (1987) (emphasis added).  Here, the defendants offer no evidence in support of their claim that the Government chose to prosecute them because they hold pro-life views.  For this reason, the defendants' selective prosecution claim should be denied. [1]

---

[1] On the opening page of their Motion, the defendants allege that the Government engaged in "selective and vindictive prosecution" of the defendants, but the defendants' argument focuses entirely on a selective prosecution claim, and they offer no law or analysis in support of a vindictive prosecution claim.  This argument is therefore waived. *Norton v. Sam's Club*, 145 F.3d 114, 177 (2d Cir. 1998) ("Issues not sufficiently argued in the briefs are considered waived . . . ."; *Levine v. Lawrence*, No. 03-cv-1694, 2005 WL 1412143, at *5 (E.D.N.Y. June 15, 2005) ("[F]ailure to adequately brief an argument constitutes waiver of that argument . . . . ").  But even if the Court were to consider a vindictive prosecution claim, that claim would also fail.  A defendant is entitled to dismissal of a charge on the ground of alleged vindictiveness only if she demonstrates "'actual'

10

**B. The FACE Act Does Not Exceed Commerce Clause Authority**

The defendants argue that the Indictment should be dismissed because the FACE Act exceeds Congress's authority under the Commerce Clause. (Mot. at 25-27). This argument is foreclosed by controlling Second Circuit precedent.

Congress' commerce power broadly extends to activities that "arise out of or are connected with a commercial transaction, which viewed in the aggregate, substantially affect[] interstate commerce." *United States v. Lopez*, 115 S. Ct. 1624 (1995). In other words, Congress' authority under the Commerce Clause encompasses the regulation of commercial activity and, conversely, of obstructive conduct that substantially affects interstate commerce. *See Gregg*, 226 F.3d at 262; *Cheffer*, 55 F.3d at 1520. The Supreme Court has also held that Congress may proscribe conduct without a jurisdictional element, where it has rationally concluded that the *class of activities* substantially affected interstate commerce. *Perez v. United States*, 402 U.S. 146, 154 (1971); *Soderna*, 82 F.3d at 1373 (citing *Summit Health, Ltd. v. Pinhas*, 500 U.S. 322, 332 (1991)) ("[T]he test [is] not the effect of the particular conduct alleged, but that effect cumulated over all the conduct subject to the statute.").

---

vindictiveness, or if there is a presumption of vindictiveness that has not been rebutted by objective evidence justifying the prosecutor's action." *United States v. Johnson*, 171 F.3d 139, 140 (2d Cir. 1999) (per curiam). To establish actual vindictiveness, a defendant must prove that "'(1) the prosecutor harbored genuine animus toward the defendant or was prevailed upon to bring the charges by another with animus such that the prosecutor could be considered a 'stalking horse,' and (2) the defendant would not have been prosecuted except for the animus.'" *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) (citation omitted). "A finding of actual vindictiveness requires 'direct' evidence, such as evidence of a statement by the prosecutor, which is available 'only in a rare case.'" *Johnson*, 171 F.3d at 140 (citation omitted). The defendants have not attempted—much less succeeded—in showing any actual vindictiveness in this prosecution.

As every Court of Appeals, including the Second Circuit, to address the issue has held, Congress' extensive findings provide a rational basis for concluding the conduct prohibited by Section 248(a)(1) substantially affects interstate commerce. *Gregg*, 226 F.3d at 264–66; *Norton*, 298 F.3d at 556; *Weslin*, 156 F.3d at 296; *Bird*, 124 F.3d at 678-684; *Hoffman v. Hunt*, 126 F.3d 575, 584 (4th Cir. 1997); *Soderna*, 82 F.3d at 1373-74; *Dinwiddie*, 76 F.3d at 919; *Terry*, 101 F.3d at 1418; *United States v. Wilson*, 73 F.3d 675, 680 (7th Cir. 1995); *Cheffer*, 55 F.3d 1517; *American Life League, Inc.*, 47 F.3d at 647. The defendants make no effort to grapple with these holdings.

Instead, the defendants claim that the Supreme Court's decision in *Dobbs* exposed Section 248 as "unconstitutional by virtue of the lack of Congressional authority to sustain it under the Commerce Clause." (Mot. at 25). As discussed below, *see infra* Section II.B, the decision in *Dobbs* has no bearing on the robust precedent that Section 248 is a valid exercise of the Commerce Clause. Every court to have examined Section 248's constitutionality cited the Commerce Clause as the source of its validity and *Dobbs* nowhere addresses or discusses Congress's authority to enact legislation pursuant to the Commerce Clause.

The defendants urge the Court to apply the logic of a recent concurring opinion by Judge Walker in *Jingrong v. Chinese Anti-Cult World All. Inc.*, 16 F.4th 47 (2d Cir. 2021), *cert. denied*, 143 S. Ct. 90 (2022), to find that Section 248 is invalid under the Commerce Clause. But Judge Walker's concurrence was expressly limited to a subsection of Section 248 that is not at issue in this case. In *Jingrong*, Judge Walker considered the limited question of whether Section 248(a)(2), which prohibits the use of force, threats of force or physical obstruction against worshippers *at places of religious worship*, is a proper exercise of Congressional power under the Commerce

12

Clause. *See Jingrong*, 16 F.4th at 63. Judge Walker's reasoning dealt only with whether religious worship—not reproductive health services—effected interstate commerce. *Id.* at 63-64. Thus, this analysis is irrelevant to Section 248(a)(1) and should not disturb the clear and binding precedent of the Second Circuit and the persuasive authority of its sister circuits that Section 248(a)(1) remains a valid exercise of Congress's authority under the Commerce Clause.

### C. The FACE Act Remains Valid After *Dobbs*

The defendants move to dismiss the Indictment in light of the Supreme Court's decision in *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228 (June 24, 2022), which they allege invalidated Section 248(a)(1). (Mot. at 14-16). Because *Dobbs* spoke only to the existence of a federal constitutional right to abortion, which is irrelevant to the legal framework of Section 248(a)(1), *Dobbs* has no effect on the constitutionality of Section 248(a)(1), and does not provide a basis to dismiss the Indictment.

In *Dobbs*, the Supreme Court held that abortion was not a protected right under the Constitution, overturning both *Roe v. Wade*, 410 U.S. 113 (1973), and *Planned Parenthood of Southeastern Pa. v. Casey*, 505 U.S. 833 (1992). *Dobbs*, 142 S. Ct. at 2279. But Section 248(a)(1) has never been based in a federal right to abortion; it is instead an appropriate exercise of Congress's power to legislate under the Commerce Clause, which provides Congress with the authority to regulate individual behavior that affects interstate or foreign commerce. As noted above, the Second Circuit and every other court to have examined Section 248's constitutionality has found it to be valid, and all have cited the Commerce Clause as a source of its validity. *See Weslin*, 156 F.3d at 296; *see also Norton*, 298 F.3d at 556; *Gregg,* 226 F.3d at 264-66; *Hoffman v. Hunt*, 126 F.3d at 584; *Bird*, 124 F.3d at 678-684; *Soderna*, 82 F.3d at 1373-74; *Terry,* 101 F.3d

13

at 1412-17; *Dinwiddie*, 76 F.3d at 919; *Wilson*, 73 F.3d at 680; *Cheffer*, 55 F.3d at 1520; *American Life League, Inc. v. Reno*, 47 F.3d at 647. No court has determined that, in enacting Section 248, Congress was enforcing the previously-recognized right to abortion as recognized by *Roe*. *See Norton*, 298 F.3d at 556 (collecting cases); *United States v. Handy, et al.*, No. 22-096 (CKK), 2023 WL 4744057, at *2 (D.D.C. July 25, 2023) (finding *Dobbs* does not disturb precedent regarding the validity of Section 248 under the Commerce Clause).

The defendants ignore this case law and instead rely on flawed logic. They argue that Section 248 was enacted to "protect abortion," and as a result, if there is no federal constitutional right to abortion, Section 248 must also be unconstitutional. (Mot. at 14-16). But, regardless of the motivations for its enactment, Section 248 is not limited by statute or otherwise to abortion care. It prohibits conduct that targets the provision of reproductive health care, which the statute further defines as services to "include[] medical, surgical, counselling or referral services relating to the human reproductive system, including services relating to pregnancy or the termination of a pregnancy." 18 U.S.C. § 248(e)(5). Moreover, the defendants point to no law stating that Congress may not use its Commerce Clause power to regulate conduct unless it is the subject of a different constitutionally protected activity. Taken to its extreme, the defendants' argument would strike down, for example, the Hobbs Act, along with many other federal criminal statutes whose constitutional basis lies solely in the Commerce Clause. 18 U.S.C. § 1951; *cf. Weslin*, 156 F.3d at 296 ("Because FACE could be validly enacted under the Commerce Clause, it does not matter whether Congress's motive in enacting the statute was commercial, noncommercial, or mixed. For Congress may regulate interstate commerce for any purpose not affirmatively forbidden by the Constitution").

14

Thus, neither the *Dobbs* decision generally, nor its specific holding overturning *Roe*, affects the continued validity of Section 248.

### D.  The FACE Act is a Content-Neutral Law

The defendants also seek dismissal of the Indictment on the grounds that Section 248(a)(1) is an unconstitutional content-based regulation of speech.  (Mot. at 16-22).  This argument ignores the text of the statute, as well as controlling Second Circuit precedent, and should be rejected.

### 1.  Applicable Law

"Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed."  *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2227 (2015).  Determining whether a speech regulation is content-based "requires a court to consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys."  *Id.*.  "Provided that a regulation 'serves purposes unrelated to the content of expression,' it will be deemed content-neutral, 'even if it has an incidental effect on some speakers or messages but not others.'"  *Reed*, 135 S. Ct. at 2227 (citing *Ward*, 491 U.S. at 791).  The Supreme Court has repeatedly held that regulations are content-neutral where the regulations are aimed not at suppressing a message, but at other "secondary effects."  *See, e.g., McCullen v. Coakley*, 573 U.S. 464 (2014) (finding statute establishing buffer zones only at abortion clinics was content-neutral because violation of statute depended not "on what they say," but "simply on where they say it," and stated purpose of the statute was public safety); *Renton v. Playtime Theatres*, 475 U.S. 41, 47 48 (1986) (holding that zoning ordinance that applied only to theaters showing sexually explicit material was content-neutral because it was not aimed at suppressing

erotic speech but instead at the crime and lowered property values that typically accompany such theaters).

"A content- or speaker-based restriction on protected speech is subject to strict scrutiny and will be tolerated only upon a showing that it is narrowly tailored to a compelling government interest." *Time Warner Cable Inc. v. F.C.C.*, 729 F.3d 137, 155 (2d Cir. 2013) (citing *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642, 653, 658 (1994)). A restriction that is not content-based and only incidentally restricts expressive activity is subject to intermediate scrutiny. *See United States v. O'Brien*, 391 U.S. 367, 88 (1968). As the Supreme Court has explained, [u]nder *O'Brien*, a content-neutral regulation will be sustained if "it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." *Turner Broad. Sys., Inc.*, 512 U.S. at 662 (quoting *O'Brien*, 391 U.S. at 377). To satisfy intermediate scrutiny under *O'Brien*, "a regulation need not be the least speech-restrictive means of advancing the Government's interests. Rather, the requirement of narrow tailoring is satisfied so long as the regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Id.* at 662 (internal alterations and quotation marks omitted).

2. Discussion

As an initial matter, the plain language of Section 248 makes clear that it prohibits conduct and does not regulate speech. Namely, as discussed above, Section 248(a)(1) prohibits the use of force, threats of force (*i.e.*, speech falling outside the ambit of the First Amendment), and physical obstruction. 18 U.S.C. § 248; *Weslin*, 156 F.3d at 297 (Section 248 "does not govern speech as

16

such but, instead, is concerned with conduct that frequently has expressive components"); *Norton*, 298 F.3d at 552 (Section 248 "does not directly apply to speech, but rather prohibits three types of conduct—use of force, threat of force, and physical obstruction—which are not protected by the First Amendment"). "Violence or other types of potentially expressive activities that produce special harms distinct from their communicative impact . . . are entitled no constitutional protection" *Wisconsin v. Mitchell*, 508 U.S. 476, 484-85 (1993) (quoting *Roberts v. United States Jaycees*, 468 U.S. 609 (1985)).

Moreover, in *United States v. Weslin*, 156 F.3d 292 (2d Cir. 1998), the Second Circuit held that to the extent Section 248 implicates expression, Section 248 is facially neutral and does not violate the First Amendment. Every other circuit to consider the issue has concluded the same. *See Norton*, 298 F.3d at 556; *Gregg,* 226 at 264-66; *Hoffman*, 126 F.3d at 584; *Bird*, 124 F.3d at 678-684; *Soderna*, 82 F.3d at 1373-74; *Terry,* 101 F.3d at 1412-17; *Dinwiddie*, 76 F.3d at 919; *Wilson*, 73 F.3d at 680; *Cheffer*, 55 F.3d at 1520; *American Life League* , 47 F.3d at 647.

The defendants' argument is simply that the Second Circuit (along with the many other circuits who have made similar rulings) is wrong. The defendants claim that because Section 248(a)(1) requires that the violator be motivated by seeking to prevent the provision of reproductive health care, the court must consider the content of the violator's speech, rendering the statute content-based. (Mot. at 18). In support of its argument, the defendants rely on two Supreme Court cases that, as noted above, discuss content neutrality—*Reed v. Town of Gilbert, Ariz.*, 576 U.S. 155 (2015) and *McCullen v. Coakley*, 573 U.S. 464 (2014). (*Id.*). According to the defendants, because "the Government must examine the content of Williams and Chavannes

17

messages to determine their motivation before applying FACE," the law is "content-based on its face after *McCullen* and *Reed*." (Mot. at 18).

This argument ignores Supreme Court and Second Circuit interpretations of *McCullen* and *Reed* and misstates the necessary consideration in assessing a Section 248 violation. Neither *Reed* nor *McCullen* disturbs *Weslin's* holding on the constitutionality of Section 248. Indeed, following the decisions of *Reed* and *McCullen*, the Second Circuit was asked to expressly consider *Weslin*, and it found that *Reed* was inapposite and left the holdings of *Weslin* undisturbed. *See New York v. Griepp*, 991 F.3d 81, 128 (2d Cir. 2021), vacated on other grounds in *New York by James v. Griepp*, 11 F.4th 174 (2d Cir. Aug. 25, 2021).[2] In *Griepp*, the Circuit was asked to reconsider the content-neutrality of Section 248(a)(1) after *Reed* and reaffirmed its holding in *Weslin* that Section 248(a)(1) is content-neutral. The Circuit explained that Section 248(a)(1) applies "'*whenever* access to reproductive health services is obstructed. It contains no requirement whatsoever that the offenders intend to communicate a particular message—or any message at all—by their obstructive actions." *Id.* at 128 (quoting *Weslin*, 156 F.3d at 297). In other words, while the statute requires a motive or intent to interfere with the provision of reproductive health services, it cares

---

[2] The defendants cite to the underlying district court decision in *Griepp,* in which the court denied a preliminary injunction, as "[p]articularly instructive" and "graphically illustrat[ing] the multifaceted constitutional challenges presented in FACE prosecutions." (Mot. at 3 (citing *New York ex rel. Underwood v. Griepp*, No. 17-CV-3706, 2018 WL 3518527 (E.D.N.Y. July 20, 2018)). But they fail to identify how their arguments are supported by this decision. In fact, with respect to the question of whether *Weslin* survives after *Reed* and *McCullen*, Judge Ammon in *Griepp* was unequivocal: "The defendants argue that FACE is an unconstitutional content-based restriction on speech. The Second Circuit's decision in *United States v. Weslin*, 156 F.3d 292, 295 (2d Cir. 1998) forecloses this argument . . . The defendants argue that the Supreme Court's opinions in [*McCullen*] and [*Reed*], undermine the Second Circuit's decision in *Weslin* to such a degree that this Court should reject its holding. There is no merit to this claim . . . In sum, this Court concludes that *Weslin* is a controlling precedent that neither the Second Circuit nor the Supreme Court has overruled or undermined."

nothing of the message expressed by the conduct.  As the Eight Circuit stated in *United States v. Dinwiddie*, 76 F.3d 913, 923 (8th Cir. 1996),

> FACE's motive requirement does not discriminate against speech or conduct that expresses an abortion-related message.  FACE would, for example, apply to anyone who blockades a clinic to prevent a woman from getting an abortion, regardless of the message expressed by the blockade.  Thus, FACE would prohibit striking employees from obstructing access to a clinic in order to stop women from getting abortions, even if the workers were carrying signs that said, "We are underpaid!" rather than "Abortion is wrong."

*See also Griepp*, 991 F.3d a 128; *Weslin*, 156 F.3d at 297 (citing *Dinwiddle*).  For this reason, the defendants are wrong to claim that individuals engaging in the same conduct as the defendants but who, rather than have a view on abortion, were "upset with a White abortionist and an all-White staff" or "a group of Martin Luther King Jr. followers who object to the facility not treating African-Americans" would not violate Section 248(a)(1).  (Mot. at 18).  The FACE Act, and case law interpreting it, make clear that as long as those individuals seek to interfere with people seeking or providing reproductive health services, they could be found to have violated Section 248(a)(1).

The Supreme Court has cautioned against too broad a reading of *Reed*.  Last year, in *City of Austin v. Reagan National Advertising of Austin LLC*, 142 S. Ct. 1464 (2022), the Supreme Court reversed a Fifth Circuit decision for applying "too extreme an interpretation of *Reed*" and clarified that *Reed* did not upset well-settled precedent that "restrictions on speech may require some evaluation of the speech and nonetheless remain content neutral." *Id*. at 1471, 1473; *see also Brokamp v. James*, 66 F.4th 374 (2d Cir. 2023); *GEFT Outdoor LLC v. City of Westfield*, 39 F.4th 821, 925 (7th Cir. 2022) (observing that, in *City of Austin*, the Supreme Court "altogether rejected [the idea] that a need-to-read requirement" to determine whether communication falls within

19

statutory prohibition "necessarily shows regulation based on the content of speech").  Instead, the Court in *City of Austin* upheld a challenged municipal sign code which required "reading a billboard to determine whether it directs readers to the property on which it stands or to some other, offsite location," because the law did "not single out any topic or subject matter for differential treatment." *Id.* at 1472.  Here too, Section 248(a)(1) does not single out any viewpoint or topic, but merely prohibits conduct that seeks to prevent access to reproductive health care.  Accordingly, neither *Reed* nor *McCullen* require that *Weslin* be revisited.

Because Section 248(a)(1) is content-neutral, it is subject to intermediate, rather than strict, scrutiny.  *O'Brien*, 391 U.S. at 377**.**  Under *O'Brien*, the following conditions must be met: "(i) the regulation must serve an important or substantial governmental interest, (ii) the interest must be unrelated to the suppression of expression; (iii) the incidental restriction of First Amendment freedoms must be narrowly tailored to that interest.  *Weslin*, 156 F.3d at 297 (citing *O'Brien*, 381 U.S. at 377).  The Second Circuit (and several other circuits) have held that Section 248 withstands intermediate scrutiny under *O'Brien. Weslin*, 156 F.3d at 298 (finding that Section 248 addresses important and substantial government interests, is unrelated to the suppression of free expression and is narrowly tailored); *see also Norton*, 298 F.3d at 553; *Dinwiddie*, 76 F.3d at 924; *Terry*, 101 F.3d at 1420.

### E.  The Indictment Does Not Violate the Religious Freedom Restoration Act or the Free Exercise Clause of the First Amendment

The defendants further urge the Court to dismiss the Indictment because they claim that Section 248 violates the Religious Freedom Restoration Act ("RFRA") and the Free Exercise Clause of the First Amendment.  (Mot. at 22-24).  Both arguments should be rejected.

20

1.    The FACE Act Does Not Violate The Religious Freedom Restoration Act

The RFRA provides that the Government may not "substantially burden a person's exercise of religion" unless it "demonstrates that the application of the burden to the person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that . . . interest."  42 U.S.C. § 2000bb-1.

As with the defendants' other arguments, every court to have considered whether Section 248 violates the RFRA has found that it does not.  *See American Life League*, 47 F.3d at 654; *Cheffer*, 55 F.3d 1517; *United States v. Weslin*, 964 F. Supp. 83, 87-88 (W.D.N.Y. 1997), *aff'd*, 156 F.3d 292 (2d Cir. 1998); *United States v. Dinwiddie*, 885 F. Supp. 1286, 1289 (W.D. Mo. 1995), aff'd and remanded, 76 F.3d 913 (8th Cir. 1996) (summarily agreeing with other courts that FACE Act does not violation RFRA); *United States v. Brock*, 863 F. Supp. 851, 866 (E.D. Wis. 1994), *aff'd sub nom. United States v. Soderna*, 82 F.3d 1370 (7th Cir. 1996).

Moreover, the defendants have not alleged that their exercise of religion requires them to use force, threats of force or physical obstruction of clinic entrances to prevent abortions.  To the contrary, the defendants argue that their "pro-life praying, singing, Bible reading and counseling is religiously motivated."  (Mot. at 23).  But the defendants were not charged in the Indictment for those religious activities.  Indeed, the defendants participated in pro-life praying, singing, Bible reading and counseling outside of the Health Center for years without issue.  It was only when they engaged in prohibited conduct—i.e., force, threats of force and physical obstruction—that the defendants were charged federally.  The defendants do not—as they cannot—claim that this particular conduct is religiously motivated or protected.

21

This issue was addressed squarely in the Eleventh Circuit's decision in *Cheffer.* In *Cheffer*, the defendants asserted that abortion violated their sincerely held religious beliefs and that they exercised those beliefs by engaging in sidewalk counseling and oral protest, but they did not (and could not) assert that "the exercise of their religion require[d] them to use physical force or threats of physical force to prevent abortions." 55 F.3d at 1522. Thus, the Eleventh Circuit found that the FACE Act did not burden their religious practice. Similarly, here, the FACE Act does not prevent the defendants from undertaking religiously motivated activities near health centers that provide abortions.

Lastly, even if the FACE Act burdened the defendants' religious practices, courts have uniformly found that the FACE Act does not violate the RFRA because it furthers a compelling governmental interest and is sufficiently narrow. *American Life League,* 47 F.3d at 656; *Weslin*, 964 F. Supp. at 87; *United States v. Dinwiddie*, 885 F. Supp. 1286, 1289 (W.D. Mo. 1995), aff'd and remanded, 76 F.3d 913 (8th Cir. 1996) (summarily agreeing with other courts that FACE does not violation RFRA); *United States v. Brock*, 863 F. Supp. 851, 866 (E.D. Wis. 1994), aff'd sub nom. *United States v. Soderna*, 82 F.3d 1370 (7th Cir. 1996). The Government has a compelling interest in preventing violence and physical obstruction and in preserving physical access to health care. *See American Life League,* 47 F.3d at 656 (finding compelling interests in "protect[ing] public health by promoting unobstructed access to reproductive health facilities" and "protect[ing] public safety by proscribing all violence, threatening or obstructive conduct aims at patients and providers"). And the FACE Act is narrowly tailored to address these specific interests: it prohibits only conduct involving force, threats of force, or obstruction. *Id.* Accordingly, the defendants' motion to dismiss on this ground must be denied.

22

2.   The FACE Act Does Not Violate the Free Exercise Clause

The Free Exercise Clause provides that "Congress shall make no law . . . prohibiting the free exercise" of religion. U.S. Const. Amend. I.  Essentially, the Free Exercise Clause prohibits the Government from adopting laws designed to suppress religious beliefs or practice.  *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 521 (1993).  "It is well established that a generally applicable law that does not target religious practices does not violate the Free Exercise Clause."  *Universal Church v. Geltzer*, 463 F.3d 218, 227 (2d Cir. 2006).  This is the case "even if the law[s] ha[ve] an incidental effect on religious practice."  *American Life League, Inc.*, 47 F.3d at 654 (4th Cir. 1995); *see also Skoros v. City of New York*, 437 F.3d 1, 39 (2d Cir. 2006) (religiously neutral, generally applicable law will violate the Free Exercise Clause only if it places a "substantial burden on the observation of a central religious belief"); *United States v. Amer*, 110 F.3d 879 (2d Cir. 1997) ("[A] neutral law of general applicability does not violate the Free Exercise Clause simply because the law imposes an incidental burden on a religious practice.").

The FACE Act is a generally applicable law that is neutral toward religion; it does not take religion into account in any way.  *Cheffer*, 55 F.3d at 1522; *American Life League, Inc.*, 47 F.3d at 654.  Whether a violator acts because of a deeply held religious conviction (as the defendant appears to be alleging) or a secular opinion makes no difference, the same conduct is prohibited under Section 248.  *Id.*

The defendants' efforts to demonstrate a religious aspect to Section 248 by citing to a perception of "the Government's blatant over- and under-inclusivity—enforcing FACE against nonviolent pro-life individuals, while refusing to enforce it against violence pro-choice individual" fail.  (Mot. at 25).  First, for the reasons discussed below, the defendant's perception of the

23

Government's enforcement practices is of no relevance to the Free Exercise Clause. Second, even the divisions the defendants allege are not religiously based, but rather they run along pro-life and pro-choice lines. And third, irrespective of whether Section 248 as applied to the defendants violated the FACE Act, the defendants in this case are not the "nonviolent pro-life individuals" that they reference. To the contrary, in addition to physically obstructing clinic entrances, the defendants used threats of force and force itself to achieve their goals.

Therefore, Section 248 does not violate the First Amendment's Free Exercise Clause and the defendant's motion to dismiss on this ground must be denied.

## CONCLUSION

As set forth herein, the Motion should be denied in its entirety.

Dated:      New York, New York
            August 25, 2023

                              Respectfully submitted,

                              DAMIAN WILLIAMS
                              United States Attorney
                              Southern District of New York


                          By: _____
                              Jamie Bagliebter
                              Assistant United States Attorney
                              Southern District of New York
                              (212) 637- 2236

24