UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

                                                                                     22 Cr. 684 (JLR)

    -against-

BEVELYN WILLIAMS,

              Defendant,
-----------------------------------------------------------X

TO:    THE HONORABLE JENNIFER L. ROCHON

# MOTION FOR JUDGMENT OF ACQUITTAL AND
# FOR A NEW TRIAL PURSUANT TO FEDERAL RULES OF
# CRIMINAL PROCEDURE 29 AND 33

Calvin H. Scholar
*Attorney for Bevelyn Williams*
The C.H. Scholar Law Firm, P.L.L.C.
225 Broadway, Suite 715
New York, New York 10007
Telephone: (212) 323-6922
Facsimile: (212) 323-6923

April 1, 2024

# TABLE OF CONTENTS

**Preliminary Statement**………………………………………………………………1

**Argument**…………………………………………………………………………..2

I. **The Court should vacate the verdict on Count Two Under Rule 29**………………2
   A. Standard of Review……………………………………………………………2
   B. Evidence was insufficient to establish guilt on every element of Count 2…….3
   C. Testimony was inconsistent with the video evidence of the incident…………..4

II. **The Court should grant a new trial**…………...……………………………………..7
   A. An improper compromise verdict was rendered in the instant case…...……..8

   **Conclusion** …………………………………..………………………………11

# TABLE OF AUTHORITIES

**CASES**

Bibbens v. Dalsheim, 21 F.3d 13 (2d Cir. 1994) ............................................................... 9,10
Carpenters & Joiners v. United States, 330 U.S. 395 (1899) .............................................. 2
Jackson v. Virgina, 443 U.S. 307 (1979)………………………………………..……2, 3
Pena-Rodriguez v. Colarado, 580 U.S. 206 (1946) ........................................................ 10
Remmer v. United States, 347 U.S. 227 (1954) ................................................................. 9
United States v. Blasini-Luberas, 169 F.3d 57, 62 (1st Cir. 1999)………..……………..2
United States v. Calbas, 821 F.3d 887 (2d Cir. 1987) ..................................................... 10
United States v.Coplan, 703 F.3d 46, 69 (2d Cir. 2012)……………………………….3
United States v. D'Amato, 39 F.3d 1249 (2d Cir. 1994) .................................................... 3
United States v. Ferguson, 246 F.3d 129 (2d Cir. 2001) ............................................... 4, 7
United States v. Finnerty, 474 F.Supp.2d 530 (S.D.N.Y. 2007) .................................... 3, 4
United States v. Glenn, 312 F.3d 58 (2d Cir. 2002) .......................................................... 3
United States v. Jackson, 368 F.3d 59 (2d Cir. 2004) ....................................................... 3
United States v. Johnson, 495 F.2d 1097 (5th Cir. 1974)……………………………..9,10
United States v. Kopp, 562 F. 3d 141……………………………………………………..7
United States v. Lincoln, 630 F.2d 1313 (8th Cir. 1980) ................................................... 4
United States v. Lorenzo, 534 F.3d 153 (2d Cir. 2008) ..................................................... 2
United States v. McMahon, 2024 WL 896838 (E.D.N.Y. Mar. 1, 2024) .......................... 8
United States v. Sanchez, 969 F.2d 1409 (2d Cir. 1992)……………………………..4, 7
United States v. Taylor, 464 F.2d 240 (2d Cir. 1972) ................................................... 2, 3
United States v. Torres, 128 F. 3d 38 (2d Cir. 1997) ........................................................ 7

**STATUTES**

18 U.S.C. § 248……………………………………………………………………….1, 7
Fed. R. Crim. P. 29 ...................................................................................................... 1-4, 7
Fed. R. of Crim. P. 33 ........................................................................................ 1, 3, 4, 7, 8
Fed. R. Evid. 606(b)……………………………………………………….………..9, 10

**TRANSCRIPTS**

Tr. at 210 ......................................................................................................................... 4, 5
Tr. at 227 ............................................................................................................................. 4
Tr. at 229 ............................................................................................................................. 5
Tr. at 230……………………………………………………………………………….4, 5
Tr. at 231 .............................................................................................................................. 5
Tr. at 234 ............................................................................................................................. 5
Tr. at 338 ............................................................................................................................. 6
Tr. at 339 ............................................................................................................................. 4
Tr. at 400 ............................................................................................................................. 6

Tr. at 413 ............................................................................................................................ 4, 6
Tr. at 414 ............................................................................................................................... 4
Tr. at 419 ............................................................................................................................ 4, 6
Tr. at 421 ............................................................................................................................ 4, 6
Tr. at 422 ............................................................................................................................ 4, 6
Tr. at 440 ............................................................................................................................... 6
Tr. at 441 ............................................................................................................................... 6
Tr. at 443 ............................................................................................................................... 7
Tr. at 450 ............................................................................................................................... 5
Tr. at 886 ............................................................................................................................... 8
Tr. at 899 ............................................................................................................................... 8
Tr. at 900 ............................................................................................................................... 8

**EXHIBITS**

**Government**
GX-156………………………………………………………………………………….5
GX-161………………………………………………………………………………….5
GX-191………………………………………………………………………………….7

**Defense**
DA…………………………………………………………………………………...4, 6
DD……………………………………………………………………………………4, 6
DE……………………………………………………………………………………..4-7
DF…………………………………………………………………………………...4, 6

# **PRELIMINARY STATEMENT**

The defendant moves this Court for the entry of a judgment of acquittal on the sole count of conviction pursuant to Federal Rule of Criminal Procedure 29 and for a new trial pursuant to pursuant to Federal Rule of Criminal Procedure 33 for the reasons set forth in this memorandum. First, there was a lack of sufficient evidence that was required to sustain a conviction on Count 2. Second, a review of all of the circumstances set forth on the record supported the conclusion that an improper compromise verdict was rendered by the trial jury. For these reasons, the defense respectfully requests the above listed relief and any other and further relief as to this Court may seem, just and proper.

# ARGUMENT

## I. The Court should vacate the verdict on Count Two under Rule 29.

### A. Standard of Review

In the system of justice applied by our Courts, "the application of the beyond-a-reasonable-doubt standard to the evidence is not irretrievably committed to jury discretion." Jackson v. Virgina, 443 U.S. 307, 318 n.10 (1979). "The Government must introduce sufficient evidence to allow the jury to reasonably infer that each essential element of the crime charged has been proved beyond a reasonable doubt." Id. at 319. A jury may be "permitted to enter an…unreasonable verdict of 'not guilty,'" it does not have the "power to enter an unreasonable verdict of guilty." Id. (citing Carpenters & Joiners v. United States, 330 U.S. 395, 408 (1899)).

A jury has the power to determine the credibility of witnesses, weigh the evidence, and draw justifiable inferences from proven facts, United States v. Taylor, 464 F.2d 240, 243 (2d Cir. 1972), however, "juries do not have carte blanche," United States v. Blasini-Luberas, 169 F.3d 57, 62 (1st Cir. 1999), and "[t]he jury may not be permitted to conjecture…or to conclude upon pure speculation or from passion, prejudice, or sympathy." Taylor, 464 F.2d at 243. A reviewing Court must "take a hard look at the record and…reject those evidentiary interpretation and illations that unreasonable, insupportable, or overly speculative." Blasini-Luberas, 169 F.3d at 62 (internal citations and quotation marks omitted); see also United States v. Lorenzo, 534 F.3d 153, 159 (2d Cir. 2008) ("specious inferences are not indulged, because it would not satisfy the Constitution to have a jury determine that the defendant is probably guilty" (internal citation, quotation marks, and alterations omitted) (emphasis in the original).

"If the evidence is such that reasonable jur[ors] must necessarily have…a [reasonable] doubt, the judge must require acquittal, because no other result is permissible within the fixed

bounds of jury consideration." Taylor, 464 F.2d at 243. If the evidence "gives equal or nearly equal circumstantial support to a theory of guilty and a theory of innocence, then a reasonable jury must necessarily entertain a reasonable doubt" and a judgment of acquittal is required pursuant to Fed. R. Crim. P. 29. United States v. Coplan, 703 F.3d 46, 69 (2d Cir. 2012); see also United States v. Glenn, 312 F.3d 58, 70 (2d Cir. 2002); United States v. D'Amato, 39 F.3d 1249 (2d Cir. 1994).

### B. Evidence was insufficient to establish guilt on every element of Count 2

A judgment of acquittal should be granted on Count Two because the witnesses who supplied the only evidence of the defendant's involvement were incredible as a matter of law as the evidence that they provided was directly contradicted by the video evidence.

Fed. R. Crim. P. 29 requires the Court to "enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a)-(c). "The test or determining a challenge to the sufficiency of the evidence asks whether a 'rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" United States v. Jackson, 368 F.3d 59, 63 (2d Cir. 2004) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).

In the instant case, no rational trier of fact could have concluded guilt from the evidence the Government supplied at trial. The lack of credible evidence resulted in an improper conviction which was necessarily a miscarriage of justice which would require a new trial. Fed. R. of Crim. P. 33 states that a Court may "vacate any judgment and grant a new trial if the interests of justice so requires." It is well settled that the defendant bears the burden of establishing that this extraordinary remedy should be applied. However, "a trial court has 'broad discretion ... to set

aside a jury verdict and order a new trial to avert a perceived miscarriage of justice.'" United States v. Finnerty, 474 F.Supp.2d 530, 545 (S.D.N.Y. 2007); See United States v. Ferguson, 246 F.3d 129, 133 (2d Cir. 2001) (quoting United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992)). When a Court "enters a judgment of acquittal after a guilty verdict, the Court must also conditionally determine whether any motion for a new trial should be granted if the judgment of acquittal is later vacated or reversed." Fed. R. Crim. P. 29 (d)(1)' United States v. Finnerty, 474 F.Supp.2d 530, 545 (S.D.N.Y. 2007).

In order to determine whether to grant a new trial, the trial Court is not limited and the Court can weigh the evidence and in so doing evaluate for itself the credibility of the witnesses.'" United States v. Sanchez, at 1413 (quoting United States v. Lincoln, 630 F.2d 1313, 1319 (8th Cir. 1980)). The Court in United States v. Ferguson, 246 F.3d 129, 133 (2d Cir. 2001), held that the trial Court should not supplant the jury's credibility assessment with its own finding. When a lack of credible evidence has resulted in an improper conviction, the "overriding concern of a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." United States v. Finnerty, 474 F.Supp.2d 530, 545 (S.D.N.Y. 2007).

**C. Testimony was inconsistent with the video evidence of the incident**

Ms. Williams travelled to New York City in June of 2020 to protest abortion. Tr. 227:18-22; Tr. 339:10-16. She also travelled to try to provide counseling to women who were perhaps in the midst of a decision to have an abortion. Tr. 413, 414, 419, 421, 422; Exh DA, DD, DE, DF. She sang. She yelled. And she was confrontational. Ms. Williams was struck by counter-protesters throughout the two days of protests that occurred in SOHO. Tr. 230:22-231:3. These counter-protesters were invited by the Planned Parenthood location to engage in chaos. Tr. 210:1-17; Tr. 231:21-234:12. Planned Parenthood staff knew that these counter-protesters could not be

4

controlled; had not been vetted; and had received no training towards handling a vigorous anti-abortion protest. Tr. 210:1-17; Tr. 224:24-225:9; Tr. 229-230; Tr. 231:21-234:12. Despite the foregoing, Planned Parenthood engaged these counter-protesters and actively pleaded for their attendance at the June 20, 2020 protest. Tr. 210:1-17; Tr. 231:21-234:12.

Ms. Williams was ultimately convicted for causing physical injury to Adrienne Verrilli during the June 20, 2020 protest. The video evidence showed that Ms. Verrilli had struck Ms. Williams with a door and the force of the strike caused the door to recoil back on Ms. Verrilli's arm. Exh DE. The video evidence also showed that Ms. Williams was struck by counter-protestors. Tr. 230:22-231:3, GX-156, 161. In fact, Ms. Verrilli forcibly pushed Ms. Williams during the protest on June 19, 2020. Tr. 450; GX-161. Ms. Verrilli placed her arms on Ms. Williams without Ms. Williams' consent and Ms. Verrilli placed her closed fist repeatedly in Ms. Williams' face. Tr. 450; GX-161.

Ms. Verrilli's actions on June 19, 2020 and June 20, 2020 were those of a counter-protester. She actively sought to physically engage the anti-abortion activists. These counter-protesters went to great lengths to ensure violent chaos—the counter-protesters coordinated their attacks to promote violence, locked arms causing a barrier in front of the door to Planned Parenthood, and they coordinated with each other to physically engage the anti-abortion activists. Both sides of the protest were passionate; they both held strong beliefs; and both were convinced that their position was the "right" side. What differed between the groups was their distinct views on the matter of abortion. The Government has sought to punish Ms. Williams for her outspoken role in the anti-abortion protest while no criminal charges have been brought against any of the counter-protesters.

The video evidence was clear that Ms. Williams moved out of the way of people approaching the door so that the door could be opened and shut to allow entry and exit to Planned

Parenthood. Tr. 400, 413, 419, 421, 422; Exh DA, DD, DE, DF. The video evidence was clear that Ms. Williams approached women who she identified as potential patients to speak to them about their options and possibly not having an abortion. Exh DA, DD, DE, DF. The video evidence was also clear that the counter-protesters were violent and blocked the doors by hiding it behind their umbrellas or locking arms in front of the door to create a barrier which kept everyone, including patients, away from the door. Exh DA, DD, DE, DF.

At trial, the Government sought to prove that Ms. Williams caused physical injury to Ms. Verrilli in violation of 18 U.S.C. § 248 because Ms. Verrilli was associated with providing reproductive care. At trial, Ms. Verrilli testified that her arm or hand was caught in a door as a result of Ms. Williams pushing on that door to trap and injure her arm. Tr. 338:12-24; Tr. 368-377. Initially, Ms. Verrilli testified that Ms. Williams was leaning on the door and trapped her hand. Tr: 338:12-24. During cross-examination, Ms. Verrilli testified that she was able to initially open the door and then Ms. Williams slammed it shut onto her hand or arm. Tr. 440-441.

Neither of the stories Ms. Verrilli told were accurate. The video evidence clearly showed that Ms. Williams was standing with her back towards Ms. Verrilli. Exh DE. At that time, Ms. Verrilli opened the door and struck Ms. Williams while her back was turned. Exh DE. The force of the door caused the door to recoil or bounce back. Exh DE. This incidental contact was clearly accidental as Ms. Williams did not know the door would be opened as her back was to the door. Ms. Williams had no intent to injure Ms. Verrilli and did not have an opportunity to form such an intent as Ms. Williams had no way of knowing that Ms. Verrilli would strike her with the door.

Thereafter, the door never shut. Exh DE. The video evidence clearly showed that the door remained open with enough space for Ms. Verrilli to remove her arm or hand. Exh DE. Thus, the video evidence clearly contradicted Ms. Verrilli's testimony and clearly established that Ms.

6

Williams did not cause a physical injury in the manner contemplated by 18 U.S.C. § 248. See United States v. Kopp, 562 F.3d 141, 144-45 cert. denied, 538 U.S. 1008 (2009); Legislative history of FACE, S. Rep. 103-117, 103rd Cong., 1st Sess. 24 n. 39 (1993). In fact, there was a question as to whether Ms. Williams caused any injury at all to Ms. Verrilli as Ms. Verrilli spoke in a conversational tone about her hand during the incident and failed to scream out in pain or seek medical attention immediately after the incident. Moreover, Ms. Verrilli never dropped her cell phone which she was using to film during the incident and continued to use her hand without any signs of discomfort as the video evidence established. Tr. 443; GX 191, Exh DE. There was insufficient evidence to establish the element of physical injury beyond a reasonable doubt. The defense respectfully requests that the Court enter a judgment of acquittal pursuant to Rule 29.

## II.     The Court should grant a new trial.

Fed. R. Crim. P. 33(a) permits a Court to "vacate any judgment and grant a new trial if the interests of justice so requires." The trial Court has "broad discretion…to set aside a jury verdict and order a new trial to avert a perceived miscarriage of justice." United States v. Ferguson, 246 F.3d 129, 133 (2d Cir. 2001) (quoting United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992)). "Generally, a Court has 'broader discretion to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29.'" Id. (quoting United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001)).

"The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." Ferguson 246 F.3d at 134. Motions brought pursuant to Rule 33 are "committed to the trial Court's discretion." United States v. Torres, 128 F.3d 38, 48 (2d Cir. 1997). When deciding whether to grant a new trial under Rule 33, the Court must "examine the entire

7

case, take into account all facts and circumstances, and make an objective evaluation." Ferguson, 246 F.3d at 134. However, when considering a Rule 33 motion, the Court "is not required to view the evidence in the light most favorable to the Government." United States v. McMahon, 2024 WL 896838 (E.D.N.Y. Mar. 1, 2024).

### A. An improper compromise verdict was rendered in the instant case

Although the record set forth that the jurors stated that each member had reached a verdict of guilty on Count 2, the record contained sufficient evidence that the verdict was an improper compromise verdict. A new trial should be granted or in the alternative, a hearing should be conducted regarding the improper compromise verdict.

At the start of the second day of deliberations, the jury sent a note to the Court which read:

```
12          This is Court Exhibit 7.  It says:  "Count Two,
13     Williams.  Does defendant have to be found guilty of all four
14     elements, including bodily injury, to be guilty of clinic
15     access obstruction?  So, if element four is not met, must the
16     Williams defendant be found not guilty of Count Two while
17     Chavannes can be guilty of Count Three without a finding bodily
18     injury?"
```

Tr. 886:12-18.

From a plain reading of the note it appeared that the jury had determined that Ms. Williams had not, in fact, caused physical injury to Adrienne Verrilli. Later in the day, the Court received a note that one juror felt like she was ill and could not continue. Tr. 899:15-17. That juror was examined and she stated that the members of the jury were "all like out of control, you know like disagreement and things like that." Tr. 900:1-2. The juror then emphasized that "there is so many disagreement in the room." Tr. 900:12-13.

8

The juror indicated that she may have been suffering from some type of illness and was removed from the jury room twice to be examined by healthcare professionals. After stating that she could continue, the juror re-entered the jury room and the jury resumed deliberations. A short time later, the jury returned a verdict of not-guilty on Count 1 for both defendants, but returned a verdict of guilty on Count 2 which only related to Ms. Williams' conduct and acquitted the co-defendant of Count 3. Based upon all of the circumstances, the verdict appears to have been an improper compromise.

"It is axiomatic that a jury verdict cannot be impeached by evidence of intrinsic as opposed to extrinsic influences on juror deliberations." United States v. Johnson, 495 F.2d 1097, 1102-03 (5th Cir. 1974). However, Federal Rule of Evidence 606(b) allows the Court to inquire as to the validity of a verdict when the circumstances suggest that extraneous information improperly influenced the jury verdict. Fed. R. Evid. 606(b). In so doing, the Court may examine the question "whether extraneous prejudicial information was improperly brought to the jury's attention and …the question whether any outside influence was improperly brought to bear on any juror." Fed. R. Evid. 606(b) Notes of Conference Committee, House Report No. 93-1597.

In Remmer v. United States, 347 U.S. 227 (1954), the Supreme Court held that a rebuttable presumption of prejudice to the defendant arose when a juror introduced an extraneous matter to the jury in its deliberations and there was a reasonable possibility of prejudice from it. In those situations, a verdict cannot stand.

The Second Circuit in United States v. Greer, 285 F.3d 158, 173 (2d Cir. 2002) wrote:

> "It is well-settled that any extra-record information of which a juror becomes aware is presumed prejudicial. See Remmer v. United States, 347 U.S. 227, 229, 74 S.Ct. 450, 98 L.Ed. 654 (1954). A government showing that the information is harmless will overcome this presumption. See Id. 'Where an extraneous influence is shown, the Court must apply an objective test, assessing for itself the likelihood that the influence

> would affect a typical juror.' Bibbins v. Dalsheim, 21 F.3d 13, 17 (2d Cir. 1994) (per curiam) (internal quotation marks omitted) cert. denied, 513 U.S. 901, 115 S.Ct. 261, 130 L.Ed.2d 181 (1994). A 'trial court's post-verdict determination of extra-record prejudice must be an objective one,' focusing on the information's probable effect on a 'hypothetical average juror.' United States v. Calbas, 821 F.2d 887,896 n.9 (2d Cir. 1987), cert. denied, 485 U.S. 937, 108 S.Ct. 1114, 99 L.Ed.2d 275 (1988); see Bibbins, 21 F.3d at 17. The Court may not inquire into 'the degree upon which the extra-record information was used in deliberations and the impression which jurors actually had about it.' Calbas, 821 F.2d at 897 (citing (Fed. R. Evid. 606(b)); see Bibbins, 21 F.3d at 17 (juror' affidavit as to how extrinsic information affected the thinking and voting of the jurors or the deliberations of the jury as a whole was inadmissible). However, in applying the objective test, the Court may 'appropriately consider the circumstances surrounding the introduction of [the] information in making [its] determination.' Calbas, 821 F.2d at 986 n.9."

United States v. Greer, 285 F.3d 158 at 173.

In the case at bar, the presumptively sick juror was removed from the jury room twice. It is not conjecture to conclude that the juror made her illness and subsequent treatment known to the other jurors. The extraneous information conveyed by the juror as to her condition and the impact of stressful deliberations on her health was demonstrated by the fact that a verdict was reached mere moments after she returned and the jury resumed deliberations. The fact that the verdict contradicted the first note and the jury reached a conclusion contrary to that set forth in the note only served to underscore the improper influence that the juror's treatment had upon the jury in reaching a compromise verdict. The defense respectfully submits that the circumstances establish a "trade out…a trade among the jurors to vote a certain way because somebody else voted that way" of the kind of compromise that represents jury misconduct. United States v. Johnson, 495 F.2d 1097, 1102-03 (5th Cir. 1974); See Pena-Rodriguez v. Colorado, 580 U.S. 206, 215-23 (2017) (holding that there may be extreme cases where the jury trial right requires an exception to the no-impeachment rule for jury verdicts).

10

## CONCLUSION

For the aforementioned reasons, Bevelyn Williams should be granted a judgment of acquittal on the sole count of conviction and the case dismissed in its entirety or, in the alternative, a new trial should be ordered.

DATED:     New York, New York
               April 1, 2024

                                              Respectfully submitted.

                                              /s/    Calvin H. Scholar
                                                        Attorney for Bevelyn Williams
                                                        The C.H. Scholar Law Firm, P.L.L.C.
                                                        225 Broadway, Suite 715
                                                        New York, New York 10007

TO:     The Honorable Jennifer L. Rochon
            United States District Judge
            Southern District of New York
            500 Pearl Street
            New York, New York 10007

            AUSA Mitzi Steiner
            AUSA Emily Johnson
            United States Attorney
            One Saint Andrew's Plaza
            New York, New York 10007