UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                         Plaintiff,

-against-

BEVELYN BEATTY WILLIAMS,

                         Defendant.

Case No. 1:22-cr-00684 (JLR)

**ORDER AND OPINION**

---

JENNIFER L. ROCHON, United States District Judge:

On February 22, 2024, a jury convicted Bevelyn Beatty Williams ("Defendant") of violating the Freedom to Access Clinic Entrances ("FACE") Act, 18 U.S.C. § 248(a). ECF No. 110. Williams now moves for a judgment of acquittal under Federal Rule of Criminal Procedure ("Rule") 29, or, alternatively, for a new trial under Rule 33. ECF Nos. 132 ("Br."), 134 ("Reply"). For the following reasons, the motion is DENIED.

## BACKGROUND

On December 13, 2022, a grand jury charged: (1) Williams and her co-defendant, Edmee Chavannes, with conspiracy to violate the FACE Act; (2) Williams with violating the FACE Act, resulting in bodily injury; and (3) Chavannes with violating the FACE Act. ECF No. 2. A jury trial against Williams and Chavannes began on February 12, 2024, ECF No. 69, and the jury returned its verdict on February 22, 2024, ECF No. 110; *see* ECF Nos. 115, 117, 119, 121, 123, 125, 127 (collectively, "Tr.").

The Court summarizes the evidence presented at trial relevant to the instant motion, and otherwise presumes the parties' familiarity with the facts and background of this case.

**I.  Physical Obstruction of Clinic Entrance**

The Manhattan Planned Parenthood provides reproductive health services including birth control, STI testing, pregnancy testing, screening for breast cancer and cervical cancer, and abortion procedures.  Tr. at 339:22-340:18, 347:14-15.  The Government introduced extensive video footage from which a jury could conclude that Williams was physically blocking the entrance to the Manhattan Planned Parenthood on June 19 and 20, 2020.  *See, e.g.*, GXs 117, 122, 150, 162, 187.  The Government also introduced video footage from which a jury could conclude that Williams was directing others to obstruct entrances to the facility.  *See, e.g.*, GXs 132, 170.  Additionally, three witnesses present at the Manhattan Planned Parenthood on June 19 and 20, 2020 – Lauren Betters (a legal observer), Ron Lyman (head of security for Planned Parenthood of Greater New York), and Adrienne Verrilli (a member of the Manhattan Planned Parenthood's executive staff serving as a volunteer escort at the time) – testified that Williams repeatedly blocked the entrance to the facility and directed others to do the same.  *See, e.g.*, Tr. at 143:13-18, 143:25-144:8, 153:15-19, 156:1-157:4, 158:14-24, 206:15-19, 215:4-6, 220:21-23, 350:24-351:7, 381:22-382:4, 456:21-457:2, 460:11-19.

**II.  Threats**

The Government introduced, among other evidence, video footage of Williams stating on June 19, 2020, within earshot of clinic workers, that she would "terrorize this place," that "we're gonna terrorize you so good, your business is gonna be over," that this was "war," and that she would act by "any means necessary."  GXs 101-102, 171.

**III.  Use of Force and Bodily Injury**

The Government introduced evidence from which a jury could conclude that Williams used force and caused bodily injury when obstructing access to the Manhattan Planned Parenthood.  Most prominently, the Government introduced evidence from which a jury could

conclude that Williams used force that resulted in bodily injury to Verrilli when Williams crushed Verrilli's hand in the door of the Manhattan Planned Parenthood. GXs 163, 191. Verrilli testified that she was attempting to escort a fellow Planned Parenthood volunteer into the clinic, but that Williams "was leaning on the door to try to keep it shut." Tr. at 368:14-22. Verrilli testified that she was able to open the door "a little bit" but that Williams "kept leaning on the door and smashed [her] hand in the door." *Id.* According to video footage of the incident, filmed from multiple angles, Verrilli screamed that Williams was smashing her hand, but Williams continued to shove the door shut while singing "we shall not be moved." GXs 163, 191. Verrilli testified that she suffered bruising, stiffness, and pain, and that she sought medical attention after the incident. Tr. at 374:8-18. The Government also introduced contemporaneous images of Verrilli's injured hand and her medical records related to the incident. GXs 355, 386.

## IV. Jury Deliberations and Verdict

The case was submitted to the jury for deliberations on February 21, 2024. On February 22, 2024, the jury sent a note to the Court stating: "Does [Williams] have to be found guilty of all 4 elements, including bodily injury, to be guilty of Clinic Access obstruction? So, if element 4 is not met, must [Williams] be found not guilty . . . while Chavannes can be guilty . . . without a finding [of] bodily injury?" ECF No. 112 at 110. The Court reminded the jury that "[a]ll four elements" of the substantive count against Williams "must be proven by the [G]overnment beyond a reasonable doubt before defendant Williams can be found guilty," that the jury "must consider each count and each defendant separately," and that "[w]hether [the jury] find[s] a defendant guilty or not as to one offense should not affect [the jury's] verdict as to any other offense charged." Tr. at 889:22-890:9.

The Court later received another note from the jury, stating that Juror Number Two "says that she doesn't feel good" and "feels that she cannot continue being a juror any more." ECF No.

112 at 113. The Court questioned the juror, who reported that there was "too much commotion in the room, too much noise . . . disagreement and things like that," that she felt anxious, and that she had a history of brain aneurysms. Tr. at 899:22-900:13. After medical professionals evaluated Juror Number Two, she returned to the jury room and the jury continued to deliberate. *Id.* at 906:20-914:4. Defendant did not object to the juror's return and, in fact, expressly requested that she *not* be excused from deliberations. Tr. at 903:1-6 (expressing that "unless she's physically unable to proceed," Juror Number Two "should stay"); *id.* at 907:6-909:15.

The jury acquitted Chavannes on all counts, acquitted Williams of conspiracy to violate the FACE Act, and convicted Williams of violating the FACE Act. *Id.* at 914:7-915:19; ECF No. 2.

## LEGAL STANDARDS

### I. Rule 29

"If the jury has returned a guilty verdict, the court may set aside the verdict and enter an acquittal." Fed. R. Crim. P. 29(c)(2). "To grant a motion for acquittal under Rule 29, a court must find that the evidence was legally insufficient to establish the defendant's guilt beyond a reasonable doubt." *United States v. Teman*, 465 F. Supp. 3d 277, 291 (S.D.N.Y. 2020), *aff'd*, No. 21-1920, 2023 WL 3882974 (2d Cir. June 8, 2023) (summary order). This is a "heavy burden," and the Court "view[s] the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility." *United States v. Hawkins*, 547 F.3d 66, 70 (2d Cir. 2008) (citation omitted); *accord United States v. Jimenez*, 96 F.4th 317, 324 (2d Cir. 2024). "The question is not whether this Court believes that the evidence at trial established guilt beyond a reasonable doubt, but rather, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Mi Sun Cho*, 713 F.3d 716, 720 (2d Cir. 2013) (per

4

curiam) (brackets, quotation marks, and citations omitted); *accord United States v. Swinton*, No. 23-6118, 2024 WL 1564487, at *3 (2d Cir. Apr. 11, 2024) (summary order).

## II.    Rule 33

Under Rule 33, a district "court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33.  A district court "has broad discretion to decide Rule 33 motions based upon its evaluation of the proof produced." *United States v. McPartland*, 81 F.4th 101, 123 (2d Cir. 2023) (citation omitted).  "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Id.* (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001)).  To grant a new trial, a district court must have "real concern that an innocent person may have been convicted." *Id.* (citation omitted).  A Rule 33 motion should be granted only with "great caution and in the most extraordinary circumstances." *United States v. Stewart*, 433 F.3d 273, 296 (2d Cir. 2006) (citation omitted).

## III.   Statutory Framework

The FACE Act protects individuals' access to reproductive health services and places of religious worship. *See* 18 U.S.C. § 248.  Section 248(a)(1) imposes civil and criminal liability when a person:

> by force or threat of force or by physical obstruction, intentionally injures, intimidates or interferes with or attempts to injure, intimidate or interfere with any person because that person is or has been, or in order to intimidate such person or any other person or any class of persons from, obtaining or providing reproductive health services.

*Id.* § 248(a)(1); *see id.* § 248(b)-(c).  As relevant here, Section 248(b) lays out maximum penalties for convictions under the statute, providing that "if bodily injury results" from a violation of Section 248, "the length of imprisonment shall not be more than 10 years." *Id.* § 248(b).

5

Therefore, as to Williams's conviction for violating the FACE Act as charged in the indictment, the Government had to prove beyond a reasonable doubt that: (1) Williams used force, threats of force, or physical obstruction; (2) Williams intentionally injured, intimidated, or interfered with patients or employees of the Manhattan Planned Parenthood, or attempted to do so; (3) Williams acted as she did because the employees of the Manhattan Planned Parenthood were and had been providing reproductive health services or the patients were and had been obtaining reproductive health services; and (4) Williams's conduct resulted in bodily injury. *Id.* § 248(a)(1), (b); *see also* ECF No. 2 (grand-jury indictment).

## DISCUSSION

Defendant asks the Court to vacate her guilty verdict under Rule 29, arguing that the Government failed to introduce sufficient evidence to allow the jury find that each essential element of the crime charged was proven beyond a reasonable doubt. Br. at 3. In the alternative, Defendant asks the Court to vacate her guilty verdict and grant a new trial under Rule 33 because "the lack of credible evidence resulted in an improper conviction which was necessarily a miscarriage of justice which would require a new trial." *Id.* The Court disagrees and denies both requests.

### I. Motion for Acquittal

Defendant argues that a "judgment of acquittal should be granted . . . because the witnesses who supplied the only evidence of the defendant's involvement were incredible as a matter of law as the evidence that they provided was directly contradicted by the video evidence." *Id.* Specifically, Defendant argues that "the stories Ms. Verrilli told were [not] accurate" because "[t]he video evidence clearly showed that Ms. Williams was standing with her back towards Ms. Verrilli" when "Ms. Verrilli opened the door and struck Ms. Williams while her back was turned," which "caused the door to recoil or bounce back." *Id.* at 6. Defendant asserts that "[t]his

6

incidental contact was clearly accidental . . . as Ms. Williams had no way of knowing that Ms. Verrilli would strike her with the door." *Id.* Defendant also asserts that "[t]he video evidence clearly showed that the door remained open with enough space for Ms. Verrilli to remove her arm or hand." *Id.* Defendant further raises "a question as to whether Ms. Williams caused any injury at all to Ms. Verrilli," noting that Verrilli "spoke in a conversational tone about her hand during the incident and failed to scream out in pain or seek medical attention immediately after the incident" and that she "never dropped her cell phone which she was using to film during the incident and continued to use her hand without any signs of discomfort." *Id.* at 7. Thus, Defendant argues that "Ms. Williams had no intent to injure Ms. Verrilli," *id.* at 6, and that there was "insufficient evidence to establish the element of physical injury beyond a reasonable doubt," *id.* at 7.

The Government presented sufficient evidence from which a reasonable finder of fact could have concluded that all elements of the charged offense were proven beyond a reasonable doubt. The Court takes the four elements in turn.

First, the Government provided sufficient evidence that Williams used force, threat of force, or physical obstruction to block the entrance of the Manhattan Planned Parenthood on June 19 and 20, 2020. As detailed above, the Government presented extensive video evidence that showed Williams physically blocking the entrances to the Manhattan Planned Parenthood and directing others to do the same. The Government also introduced the corroborating testimony of three witnesses who were present at the scene, Betters, Lyman, and Verrilli. The clearest indication of Williams blocking the entrance was her conduct when Verrilli attempted to escort a fellow volunteer into the facility. A reasonable jury could find beyond a reasonable doubt that

7

Williams attempted to block Verrilli from entering the building, based on the multiple videos of the incident. *See supra* Background §§ I, III.

Second, the Government provided sufficient evidence that Williams intentionally injured, intimidated, or interfered with patients or employees of the Manhattan Planned Parenthood, or attempted to do so. The Government introduced video footage of Williams stating that she would "terrorize this place," "we're gonna terrorize you so good, your business is gonna be over," that this was "war," and that she would act by "any means necessary." GXs 101-102, 171. There was evidence that Williams used force to try to ram through barricades, shoved an apparent Planned Parenthood volunteer, and took a swing at a security guard. GX 158, 161, 156, Tr. 378:10-380:8; Tr. 214:5-13. Even as to just Verrilli, the Government introduced video evidence and live testimony by Verrilli that Williams continued to shove the clinic entrance door onto Verrilli's hand while Verrilli screamed that her hand was being smashed. The videos also showed several people trying to pry the door open as Williams pressed her body against the door. *See supra* Background §§ II, III. Given this video evidence and live testimony, a reasonable factfinder could infer that Williams possessed the requisite intent beyond a reasonable doubt.

Third, the Government presented sufficient evidence that Williams acted as she did because the employees of the Manhattan Planned Parenthood were and had been providing reproductive health services or the patients were and had been obtaining reproductive health services. Defendant does not contest that "Ms. Williams travelled to New York City in June of 2020 to protest abortion," Br. at 4, and, in one video, she celebrated that "out of all the appointments today, only one couple came in" to the Planned Parenthood facility, GXs 131, 148. Ample evidence therefore supports this element.

Finally, the Government provided sufficient evidence that Defendant's actions resulted in bodily injury to Verrilli. Verrilli testified that she suffered bruising, stiffness, and pain after her hand was crushed in the door. The Government also introduced contemporaneous images of Verrilli's injured hand and the medical records related to the treatment of Verrilli's injury. *See supra* Background § III.

Defendant argues that Verrilli did not sustain bodily injury because "Ms. Verrilli spoke in a conversational tone about her hand during the incident and failed to scream out in pain or seek medical attention immediately after the incident." Br. at 7. To the contrary, the video shows Verrilli repeatedly saying "you're smashing my hand," and cursing can be heard. GX 191. Verrilli also testified that she used expletives as her hand was pressed in the door. Tr. at 372:12-14. The Government also introduced photos of Verrilli's bruised and swollen hand. GX 355; *see* Tr. at 374:19-22 (Verrilli testified that she sought medical attention a few days later because her hand was not "getting better" after "taking ibuprofen and icing it"). That Verrilli sought medical attention a few days after the incident does not preclude a reasonable jury from finding that she sustained bodily injury. Defendant also argues that "Ms. Verrilli never dropped her cell phone which she was using to film during the incident and continued to use her hand without any signs of discomfort." Br. at 7. Verrilli testified that she continued to record the incident on her phone "[i]nadvertently" and guessed that because she "had been recording . . . it stayed on." Tr. at 443:4-14. That she did not drop her phone similarly does not foreclose a reasonable jury from finding that she sustained bodily injury.

The Court rejects Williams's characterization that the evidence "irrefutabl[y]" shows that "Ms. Verrilli was the aggressor" and that she in fact "struck Ms. Williams with the door." Reply at 2; *see* Br. at 5. This characterization runs counter to the evidence presented at trial; indeed,

9

videos from multiple angles of the incident show Williams repeatedly shoving her body backwards into the door while Verrilli yelled that her hand was being smashed. *See supra* Background § III. The videos also show multiple people trying to pry the door open to free Verrilli's hand while Williams leaned back on the door. GXs 191, 163. Williams continued to press the door down on Verrilli's hand while singing "we shall not be moved." GX 191.

Furthermore, Verrilli did not, as Defendant argues, "change[] her testimony." Reply at 1 (citing Tr. at 338:12-24, 440-441); *see* Br. at 6. During her direct examination, Verrilli testified that she "was trying to open the door" but that Williams "was leaning on the door to keep it shut. So as [she] tried to open the door, [Williams] kind of shoved on it again, basically smashing [Verrilli's] hand in the door . . . . [Williams] continued to lean on the door to try to keep it shut – then [Verrilli, with the assistance of two others,] eventually got it open." Tr. at 338:12-24. During her cross-examination, Verrilli testified that "[Williams] was leaning on the door" and that she was "able to open the door . . . a little bit" before Williams "pushed the door back on [her] hand." *Id.* at 441:11-25. The testimony is both internally consistent and consistent with the video evidence. In any event, any credibility assessment of Verrilli's testimony falls within the province of the jury. *See United States v. O'Connor*, 650 F.3d 839, 855 (2d Cir. 2011) ("It is the province of the jury and not of the court to determine whether a witness who may have been inaccurate, contradictory and even untruthful in some respects was nonetheless entirely credible in the essentials of his testimony." (quotation marks and citation omitted)).

Thus, "view[ing] the evidence in the light most favorable to the government, drawing all inferences in the government's favor and deferring to the jury's assessments of the witnesses' credibility," the Court cannot conclude that the jury erred in its assessment of the evidence

presented at trial. *Hawkins*, 547 F.3d at 70 (citation omitted). Defendant's Rule 29 motion is therefore denied.

## II. Motion for a New Trial

Defendant argues that the Court should exercise its discretion under Rule 33 to grant a new trial because the jury rendered "an improper compromise verdict." Br. at 8 (emphasis omitted). Defendant also requests that if the Court does not grant a new trial, "a hearing should be conducted regarding the improper compromise verdict." *Id.* Defendant points to the note received by the jury, which read: "Does [Williams] have to be found guilty of all 4 elements, including bodily injury, to be guilty of Clinic Access obstruction? So, if element 4 is not met, must [Williams] be found not guilty . . . while Chavannes can be guilty . . . without a finding [of] bodily injury?" ECF No. 112 at 110. Defendant asserts that "a plain reading of the note" shows that "the jury had determined that Ms. Williams had not, in fact, caused physical injury to Adrienne Verrilli." Br. at 8. Defendant additionally points to another note received by the jury, which indicated that Juror Number Two "doesn't feel good" and "feels that she cannot continue being a juror any more." ECF No. 112 at 113. Defendant asserts that because Juror Number Two was examined by medical professionals before re-entering the jury room, a few hours before the jury returned its verdict, "the verdict appears to have been an improper compromise." Br. at 9.

Defendant has not articulated any reasons that "letting [the] guilty verdict stand [here] would be a manifest injustice," and the Court has no "real concern that an innocent person may have been convicted." *Ferguson*, 246 F.3d at 134 (citation omitted). As recounted above, there was sufficient (indeed, compelling) evidence to support Defendant's conviction in this case.

That a juror experienced a temporary health concern, met with medical staff, and returned to the jury room without objection shortly before Williams was convicted does not support an inference that the conviction was based on an improper compromise due to outside influence.

11

There is no reason to overturn the jury's verdict here, especially in light of the strong evidence presented by the Government at trial. Nor does the Court agree with Defendant that the juror's health concerns were necessarily considered by the jury in reaching its verdict because the ultimate verdict "contradicted" the first note received by the jury. Br. at 10. There is no basis on which to conclude that the jury did anything other than soundly and thoughtfully consider the elements of the offenses charged, seek clarification when needed through the first note, and thereafter examine the evidence in light of the instruction received.[1]

Insofar as Defendant is relying on an inconsistency between the jury's verdict as to the two co-defendants in this case, "[i]nconsistency in a verdict is not a sufficient reason for setting it aside," as the Supreme Court has "so held with respect to inconsistency between verdicts on separate charges against one defendant, and also with respect to verdicts that treat codefendants in a joint trial inconsistently." *Harris v. Rivera*, 454 U.S. 339, 345 (1981) (per curiam) (citations and footnote omitted); *accord United States v. Powell*, 469 U.S. 57, 66 (1984) ("We . . . reject, as imprudent and unworkable, a rule that would allow criminal defendants to challenge inconsistent verdicts on the ground that in their case the verdict was not the product of lenity, but of some error that worked against them. Such an individualized assessment of the reason for the inconsistency would be based either on pure speculation, or would require inquiries into the jury's deliberations that courts generally will not undertake.").

---

[1] Defendant cites *Remmer v. United States*, 347 U.S. 227 (1954) for the proposition that "a rebuttable presumption of prejudice to the defendant [arises] when a juror introduce[s] an extraneous matter to the jury in its deliberations." Br. at 9. *Remmer* is inapposite. In that case, the Supreme Court held that sending an FBI agent to investigate a juror who had allegedly commented that "he could profit by bringing in a verdict favorable to" the defendant, without the defendant's knowledge, could have jeopardized the integrity of the proceedings and unduly influenced the deliberation process. 347 U.S. at 450-51. Providing a juror with private, requested medical care – after consulting the parties – and the juror's subsequent return to deliberations at Defendant's request is not at all akin to the circumstances in *Remmer*.

For these reasons, Williams's motion for a new trial, or for a hearing, is denied.

## CONCLUSION

Williams's motion under Rule 29 for a judgment of acquittal, or, alternatively, for a new trial under Rule 33, is DENIED. The Clerk of Court is respectfully directed to close the motion pending at ECF No. 131.

Dated: May 10, 2024
New York, New York

SO ORDERED.

*Jennifer Rochon*
JENNIFER L. ROCHON
United States District Judge

13