UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

- v. -

BEVELYN BEATTY WILLIAMS,

Defendant

No. 1:22-cr-00684-JLR

**OPINION AND ORDER**

---

JENNIFER L. ROCHON, United States District Judge:

On February 22, 2024, a jury convicted Bevelyn Beatty Williams ("Williams" or "Defendant") of violating the Freedom of Access to Clinic Entrances ("FACE") Act, 18 U.S.C. § 248(a)(1). Dkt. 110. After granting Defendant's request for an extension of her sentencing hearing, on July 24, 2024, the Court entered judgment against Defendant and imposed the sentence of incarceration for 41 months followed by two years of supervised release. Dkt. 149; Dkt. 151 at 54:15-21, 55:11-12. Defendant timely appealed from her conviction and sentence. *See* Dkt. 150. Now, the week before her surrender date, Defendant requests that this Court order her released on bail pending appeal pursuant to 18 U.S.C. § 3143(b) ("Section 3143(b)"). Dkt. 164 ("Mot."); Dkt 169 ("Reply"). For the following reasons, Defendant's request for bail pending appeal is DENIED.

## BACKGROUND

The Court assumes the parties' familiarity with the facts and background of this case. The Court briefly summarizes the procedural history and facts relevant to the instant motion.

### I.    The Indictment and Motion to Dismiss

On December 13, 2022, a grand jury charged: (1) Williams and her co-defendant, Edmee Chavannes, with conspiracy to violate the FACE Act; (2) Williams with substantively

violating the FACE Act, resulting in bodily injury; and (3) Chavannes with substantively

violating the FACE Act.  Dkt. 2 (the "Indictment").

Williams and Chavannes filed a joint motion to dismiss the Indictment on August 14,

2023.  Dkts. 55, 56.  The Court denied that motion on November 8, 2023.  *United States v.*

*Williams*, 701 F. Supp. 3d 257, 261 (S.D.N.Y. 2023) ("*Williams I*").

## II.    Trial

A jury trial against Defendant and Chavannes began on February 12, 2024, Dkt. 69;

*see* Dkts. 115, 117, 119, 121, 123, 125, 127 (collectively, "Trial Tr.").

Count II of the Indictment, for which Defendant was ultimately found guilty, centered

around a June 2020 incident at the Manhattan Planned Parenthood.  At trial, the Government

introduced extensive video footage showing Defendant physically blocking the entrance to the

Manhattan Planned Parenthood on June 19 and 20, 2020, *see, e.g.*, GXs 117, 122, 150, 162,

187, and directing others to obstruct entrances to the facility, *see e.g.*, GXs 132, 170.

Additionally, three witnesses present at the Manhattan Planned Parenthood on June 19 and 20,

2020 – Lauren Betters (a legal observer), Ron Lyman (head of security for Planned

Parenthood of Greater New York), and Adrienne Verrilli (a member of the Manhattan

Planned Parenthood's executive staff serving as a volunteer escort at the time) – testified that

Williams repeatedly blocked the entrances to the facility and directed others to do the

same.  *See, e.g.*, Trial Tr. at 143:13-18, 143:25-144:8, 153:15-19, 156:1-157:4, 158:14-24,

206:15-19, 215:4-6, 220:21-23, 350:24-351:7, 381:22-382:4, 456:21-457:2, 460:11-19.  The

Government also introduced, among other evidence, video footage of Williams stating on

June 19, 2020, within earshot of clinic workers, that she would "terrorize this place," that

"we're gonna terrorize you so good, your business is gonna be over," that this was "war," and

that she would act by "any means necessary."  GXs 101-102, 171.

The Government introduced evidence that the Defendant used force that resulted in bodily injury to Verrilli when Defendant crushed Verrilli's hand in the door of the Manhattan Planned Parenthood. GXs 163, 191. Verrilli testified that she was attempting to escort a fellow Planned Parenthood volunteer into the clinic, but that Williams "was leaning on the door to try to keep it shut." Trial Tr. at 368:14-22. Verrilli testified that she was able to open the door "a little bit" but that Williams "kept leaning on the door and smashed [her] hand in the door." *Id.* As seen on video footage of the incident, filmed from multiple angles, Verrilli screamed that Williams was smashing her hand, but Williams continued to shove the door shut while singing "we shall not be moved." GX 163, GX 191. The video footage showed that it took several people pulling on the door to free Ms. Verrilli's hand as Defendant continued to press the door shut. *Id.* Verrilli testified that she suffered bruising, stiffness, and pain, and that she sought medical attention after the incident. Trial Tr. at 374:8-18. The Government also introduced contemporaneous images of Verrilli's injured hand and her medical records related to the incident. GXs 355, 386.

The jury returned its verdict on February 22, 2024. Dkt. 110. The jury acquitted Chavannes of both counts against her, acquitted Defendant of conspiracy to violate the FACE Act, and convicted Defendant of Count II, a substantive violation of the FACE Act. Trial Tr. at 915:1-19.

### III.    Post-Trial Motion

On April 1, 2024, Defendant moved for judgment of acquittal under Federal Rule of Criminal Procedure ("Rule") 29, or, alternatively, for a new trial under Rule 33. Dkt. 131. The Court denied that motion on May 10, 2024. *United States v. Williams*, No. 22-cr-00684 (JLR), 2024 WL 2112239, at *1 (S.D.N.Y. May 10, 2024) ("*Williams II*").

## IV.    Sentencing

The Court originally scheduled the Defendant's sentencing hearing for May 28, 2024.
Trial Tr. at 919:17-25.  Defendant requested an adjournment of her sentencing hearing.  Dkt.
136.  The Court granted Defendant's request and adjourned her sentencing hearing to July 24,
2024.  Dkt. 137.

On July 24, 2024, the Court entered judgment against the Defendant and imposed the
sentence of incarceration for 41 months followed by two years of supervised release.  Dkt.
149; Dkt. 151 at 54:15-21, 55:11-12.  Instead of remanding the Defendant immediately, the
Court granted Defendant's request for voluntary surrender and ordered that Defendant
voluntarily surrender on October 16, 2024.  Dkt. 151 at 58:23-59:13.

## V.    Post-Sentencing

Defendant filed a notice of appeal on July 30, 2024.  Dkt. 150.  On September 27,
2024, only about two and a half weeks before her voluntary surrender date, Defendant
requested an adjournment of her surrender date.  Dkt. 160 at 1.  In her letter requesting the
adjournment, Defendant informed the Court for the first time that she was seeking to undergo
a non-emergency surgery less than one week later, on October 3, 2024.  *Id.* at 2.  At no time
before that letter did Defendant or her counsel relay to the Court that Defendant had a
significant health issue that required immediate attention or that imminent surgery was
necessary or even contemplated.  On September 30, 2024, the Court denied Defendant's
request to adjourn her voluntary surrender date.  *United States v. Williams*, No. 22-cr-00684
(JLR), 2024 WL 4345573, at *1 (S.D.N.Y. Sept. 30, 2024) ("*Williams III*").

On October 7, 2024, the week before her voluntary surrender date, Defendant filed the
instant request.  Mot.  On October 11, 2024, the Government filed a letter opposing the

request.  Dkt. 168 ("Opp.").  Defendant filed a reply in further support of her request on the

same day.  Reply.

## LEGAL STANDARD

### I.    The FACE Act

The FACE Act protects individuals' access to reproductive health services and places

of religious worship.  *See* 18 U.S.C. § 248.  Section 248(a)(1) imposes civil and criminal

liability when a person:

> by force or threat of force or by physical obstruction,
> intentionally injures, intimidates or interferes with or attempts to
> injure, intimidate or interfere with any person because that
> person is or has been, or in order to intimidate such person or
> any other person or any class of persons from, obtaining or
> providing reproductive health services.

*Id.* § 248(a)(1); see id. §§ 248(b)-(c).  As relevant here, Section 248(b) lays out maximum

penalties for convictions under the statute, providing that "if bodily injury results" from a

violation of Section 248, "the length of imprisonment shall not be more than 10 years."  *Id*.

§ 248(b).  Therefore, as to Defendant's conviction for violating the FACE Act as charged in

the Indictment, the Government was required to prove, and the jury found, beyond a

reasonable doubt that: (1) Defendant used force, threats of force, or physical obstruction; (2)

Defendant intentionally injured, intimidated, or interfered with patients or employees of the

Manhattan Planned Parenthood, or attempted to do so; (3) Defendant acted as she did because

the employees of the Manhattan Planned Parenthood were or had been providing reproductive

health services or the patients were or had been obtaining reproductive health services; and (4)

Defendant's conduct resulted in bodily injury.  *Id*. §§ 248(a)(1), (b); Dkt. 110; *see also*

Indictment.

## II.    Bail Pending Appeal

Pursuant to the Bail Reform Act, a court "shall order that a person who has been found

guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a

petition for a writ of certiorari, be detained, unless" the Court makes certain findings.  18

U.S.C. § 3143(b)(1).  Specifically, a court "shall order" the release of such a person if the

court finds:

> (A) by clear and convincing evidence that the person is not
> likely to flee or pose a danger to the safety of any other person
> or the community if released . . . ; and
>
> (B) that the appeal is not taken for the purpose of delay and
> raises a substantial question of law or fact likely to result in—
>
>> (i) reversal,
>>
>> (ii) an order for a new trial,
>>
>> (iii) a sentence that does not include a term of
>> imprisonment, or
>>
>> (iv) a reduced sentence to a term of imprisonment less
>> than the total of the time already served plus the
>> expected duration of the appeal process.

*Id.*  This statutory guidance "establishes a presumption in favor of detention." *United States*

*v. Abuhamra*, 389 F.3d 309, 319 (2d Cir. 2004); *cf. United States v. Randell*, 761 F.2d 122,

124 (2d Cir. 1985) ("Congress intended section 3143 to reverse the then prevailing

presumption in favor of post-conviction bail.").  An appeal which "raises a substantial

question of law or fact likely to result in" reversal or an order for a new trial is not one which

requires the district court to find "that its own judgment is likely to be reversed on appeal."

*Randell*, 761 F.2d at 124 (quoting 18 U.S.C. § 3143(b)(1)(B)).  Rather, a "substantial"

question "is one of more substance than would be necessary to a finding that it was not

frivolous.  It is a 'close' question or one that very well could be decided the other way." *Id.* at

125 (citation omitted).  If a question is substantial, then the Court "must . . . consider whether

that question is so integral to the merits of the conviction on which [the] defendant is to be

imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a

new trial."  *Id.* (citation omitted).

## DISCUSSION

In opposing this motion, the Government relies centrally on its argument that the

Defendant's appeal has not raised substantial questions of law or fact.  The Court agrees.

**I.    Substantial Question**

Defendant primarily argues that her appeal raises a substantial issue of law related to

her request for a First Amendment jury instruction.  Mot at 4-8.  Defendant additionally

argues that her appeal raises a substantial question of law regarding the ongoing constitutional

validity of the FACE Act after the Supreme Court's decision in *Dobbs v. Jackson Women's

Health Org.*, 142 S. Ct. 2228 (2022); Mot. at 8-9.   The Court will address each argument in

turn.

### A.    First Amendment Instruction

Defendant argues that her appeal raises a substantial question of law as to whether the

Court should have charged the jury with an instruction "defin[ing] the parameters of the First

Amendment in the context of this case."  Mot. at 4-8.  The Court does not agree.

The Court denied the Defendant's request for a jury instruction on the First

Amendment and also held that Defendant was not permitted to argue "that [her] actions were

aligned with the First Amendment."  Dkt. 97 ("FPTC Tr.") at 68:11-70:2; Trial. Tr. 713:15-

714:3.  This ruling was based primarily on the reasons set forth in the Court's ruling on

Defendants' motion to dismiss the indictment in *Williams I*, 701 F. Supp. 3d 257, which is

incorporated herein by reference.  FPTC Tr. at 68:11-70:2; Trial. Tr. 713:15-714:3.

However, at the same time, the Court held that Defendant and Chavannes would be permitted to argue that they were "engaged in a lawful expression of [their] personal beliefs," FPTC Tr. at 70:3-18, and they did so repeatedly throughout the trial. The Court permitted the Defendant and Chavannes to point out that some of the language that they used was from the Bible and that it should be considered in context. *Id.* at 70:11-13. The Court also permitted them to argue that they were there to protest and express their religious views, which they brought out throughout the trial. *Id.* at 70:3-18; Trial Tr. 714:4-8. However, any argument that the charged conduct was constitutionally protected was a legal argument that had already been decided by the Court, and was not a jury question. FPTC Tr. at 68:11-18. The Court held that invoking the First Amendment during the trial would ask the jury to speculate as to what the First Amendment does and does not protect and whether it precludes this criminal charge. *Id.* at 68:19-24. The Court therefore found that such arguments and instructions were irrelevant under Federal Rule of Evidence ("Rule") 401 and further would run afoul of Rule 403 because such arguments and instruction would confuse the issues, invite jury nullification, and mislead the jury about whether they were required to make legal constitutional determinations, when they were not. *Id*. at 69:15-20. The Court also found persuasive that in *United States v. Darnel*, No. 22-cr-00096 (D.D.C. 2023), which also was a FACE Act trial, another court refused to provide a First Amendment instruction requested by the defendant, and that all cases to the contrary cited by Defendant were not FACE Act cases. Trial Tr. at 713:15-714:3.

Even without a charge on the First Amendment, the jury was appropriately charged. The Court added to the jury instructions concepts that were intended to address solely First Amendment activities. Specifically, the Court included language in the charge that "actions that merely make the approach to a reproductive health facility unpleasant or even

emotionally difficult, including yelling, are not prohibited." *Id.* at 849:9-12.  This portion of

the charge was grounded in the Second Circuit's direction in *New York ex rel. Spitzer v.*

*Operation Rescue National*, 273 F.3d 184, 195-96 (2d Cir. 2001) (reviewing First

Amendment constraints on application of the FACE Act).  And the distinction between

"actions that merely make the approach to a reproductive health facility unpleasant or even

emotionally difficult, including yelling" and behavior that is prohibited by the FACE Act was

repeatedly highlighted by counsel for Defendant and Chavannes in closing statements.  *See,*

*e.g.*, Trial Tr. at 790:16-21 ("These are actions that merely make the approach to a

reproductive health facility unpleasant or even emotionally difficult, including yelling, which

are not prohibited."); *id.* at 769:6-11 (arguing that although Defendant and Chavannes "yelled

and screamed" there was "no proof that [the clinic worker] was threatened or intimidated in

any way"); *id.* at 790:2-15 (arguing that although "it's emotionally challenging . . . sitting

there watching [Defendant and Chavannes] loud, proud, protesting, proclaiming," clinic

workers and volunteers were "not being intimidated, interfered with, or injured").

      Defendant argues that a First Amendment instruction is relevant to the jury's ability to

assess her intent.  Mot. at 7.  But it is irrelevant whether Defendant intended to exercise her

First Amendment rights if she also intended, as the jury was correctly instructed, to injure,

intimidate, or interfere with patients or employees of a reproductive health center because they

were seeking or providing reproductive health care services.  *See, e.g.*, *New York ex rel. James*

*v. Griepp*, 991 F.3d 81, 103 (2d Cir.) ("[E]ven when a protestor's goal is simply to share their

beliefs through counseling or literature, the protestor may still be liable for a FACE violation

if they intentionally engage in acts which naturally and probably will injure, intimidate, or

interfere with someone seeking or providing reproductive health services."), *vacated on other*

*grounds*, 11 F. 4th 174 (2d Cir. 2021); *Operation Rescue*, 273 F.3d at 194 (noting that

9

plaintiffs are likely to prove certain protestor activities violated the FACE Act by disrupting access through physical obstruction despite the possibility that "protestors' purpose may have been to communicate their views").  Indeed, both sides agreed that the jury should be charged – and hence, was charged – that "the Government must prove that the defendant would not have acted but for employees of the Manhattan Planned Parenthood providing or having had provided reproductive health services, or but for patients of the Manhattan Planned Parenthood obtaining or having had obtained reproductive health services.  Put another way, employees of the Manhattan Planned Parenthood providing or having had provided reproductive health services, or patients of the Manhattan Planned Parenthood obtaining or having had obtained reproductive health services, must have been a necessary motivation but not the sole motivation for the defendant's actions."  Dkt. 94 at 5-6; Trial Tr. at 851:7-18.  The Court further added, at Defendant's request, instructions that directed the jury to consider all the circumstances when evaluating the Defendant's motivation: "[i]n determining whether the Government has proved that the Defendant acted as she did because a patient was obtaining or had obtained, or a clinic employee was providing or had provided, reproductive health services, you may consider statements made or language used by the Defendant, the circumstances surrounding the alleged offense, and all other evidence that may shed light on the Defendant's motives."  Dkt. 94 at 6; Trial Tr. at 851:19-25.  Finally, the jury also found beyond a reasonable doubt that bodily injury resulted from Defendant's behavior.  Dkt. 112 at 91; Dkt. 110.

For these reasons, whether the Court should have instructed the jury on the First Amendment in the context of this case is a not substantial question, because it is not a "close" question or one that "very well could be decided the other way."  *Randell*, 761 F.2d at 125 (citation omitted).  Even if there was a substantial question as to whether the Court should

have instructed the jury on the First Amendment, given the instructions that were provided to the jury, Defendant would still not prevail because the question is not "so integral to the merits of the conviction on which [the] defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." *Id.* (citation omitted). By finding Defendant guilty of Count II, the jury found, beyond a reasonable doubt, that the Defendant used force, threats of force, or physical obstruction, with the intent to injure, intimidate, or interfere with patients or employees of the Manhattan Planned Parenthood, because they were providing or seeking reproductive health services, resulting in bodily injury. Such behavior, especially that which resulted in bodily injury, would not be protected by the First Amendment, as the Court held in *Williams I*, 701 F. Supp. 3d at 271-274.

    *B. Dobbs*

    Defendant also argues that her appeal raises a substantial question of law regarding the ongoing constitutional validity of the FACE Act. Mot. at 8. Defendant's prior motion to dismiss the Indictment raised several issues, including the ongoing constitutional validity of the FACE Act after the Supreme Court's decision in *Dobbs*, 142 S. Ct. 2228. *See Williams I*, 701 F. Supp. 3d at 268. The Court denied that motion to dismiss, and, as relevant here, held that *Dobbs* did not overrule *United States v. Weslin*, 156 F.3d 292, 297 (2d Cir. 1998), binding Second Circuit precedent holding that the FACE Act was a constitutional exercise of Congress's power under the Commerce Clause. *Williams I*, 701 F. Supp. 3d at 268-69. Defendant now argues that "it is possible that the Circuit will take a fresh look at *Weslin* in light of" *Dobbs*. Mot. at 8. This does not raise a substantial question of law.

    As the Court explained when denying Defendant's motion to dismiss the Indictment, "[l]ike the Second Circuit, all other courts of appeal to consider the issue have held that the reproductive health provisions of the FACE Act are constitutional under the Commerce

Clause." *Williams I*, 701 F. Supp. 3d at 269. Further, "[n]othing in *Dobbs* calls the constitutionality of the FACE Act into question. *Dobbs* does not address the FACE Act. It does not consider Congress's power to enact legislation under the Commerce Clause. Nor does it diminish the interstate economic nature of the reproductive health field. . . . In short, *Dobbs* does not overrule *Weslin*." *Id.*

In addition, as the Court pointed out in *Williams I* – and which continues to be the trend after *Williams I* – to the Court's knowledge, every other court to have been presented with an argument after *Dobbs* that the FACE Act is unconstitutional has rejected it. *See United States v. Zastrow*, No. 22-cr-00327, 2024 WL 3558363, at *3 (M.D. Tenn. July 26, 2024); *United States v. Vaughn*, No. 22-cr-00327-6, 2024 WL 3512071, at *4 (M.D. Tenn. July 22, 2024); *United States v. Handy*, No. 22-cr-096, 2023 WL 4744057, at *2-4 (D.D.C. July 25, 2023); *United States v. Gallagher*, 680 F. Supp. 3d 886, 905-07 (M.D. Tenn. 2023); *see also United States v. Houck*, No. 22-cr-00323, 2023 WL 144117, at *5 (E.D. Pa. Jan. 10, 2023).

Therefore, incorporating by reference all of the reasons set forth in the Court's decision in *Williams I*, 701 F. Supp. 3d at 268-71, Defendant's argument that the *Dobbs* decision undermines the constitutional validity of the FACE Act does not raise a question of law that is "close . . . or one that very well could be decided the other way." *Randell*, 761 F.2d at 125 (internal quotation marks and citation omitted).

## II.    Delay, Risk of Flight, and Protection of the Public

With respect to the other Section 3143(b) criteria, the appeal process is progressing, and the Court does not find that Defendant's appeal was taken for purposes of delay. However, the Court is now concerned that Defendant is a flight risk. The calculus of risk of flight has changed from when Defendant was sentenced, and certainly from when she was

evaluated for purposes of pretrial supervision. Defendant is now facing an imminent and

significant incarceratory sentence of 41 months. At Defendant's sentencing hearing in July,

the Court provided Defendant with a voluntary surrender date in October so that she could get

her affairs in order before surrendering. Dkt. 151 at 58:23-59:13. However, in the three

weeks leading up to her surrender date – many months after she was sentenced in July 2024 –

she has filed a flurry of motions seeking to avoid incarceration, exhibiting a desperation that

causes the Court to be concerned of a risk of flight. Only two and a half weeks before her

surrender date, Defendant informed the Court for the first time that she scheduled a non-

emergency surgery, and requested a significant extension of her voluntary surrender date. *See*

Dkt. 160. The Court denied that request, and noted that based on the circumstances and the

materials submitted in support of that request, "it appears that the scheduling of this surgery

now is an attempt to postpone the incarceratory sentence that has been imposed and is

scheduled to soon commence." *Williams III*, 2024 WL 4345573, at *1. When that motion

failed, and now the week prior to her voluntary surrender date, Defendant for the first time

makes the instant request for bail pending appeal, despite the fact that she filed her notice of

appeal nearly three months ago. *See U.S. v. Velissaris*, No. 22-cr-00105 (DLC), 2023 WL

3018513, at *3 (S.D.N.Y. Apr. 20, 2023) (defendant did not prove by clear and convincing

evidence that he was not likely to flee if released pending appeal based in part on his repeated

filings with the court). The Court is evaluating this recent behavior in light of Defendant's

history of noncompliance with the law in terms of her criminal history, including her recent

conviction in 2022, her travel throughout the United States to engage in the conduct with

which she was charged in this case, and her seeming inability to control her impulses as

evidenced in the video evidence at trial showing her shoving, yelling, and ultimately injuring

individuals who either brushed against her, addressed her or tried to get by her, culminating in

her violent statement at sentencing that if she wasn't "saved" by religion at the time, she

"would have probably punched that lady [Ms. Verrilli] in the face."  Dkt. 151 at 42:12-16.

While the Court has considered Defendant's ties to the community and family responsibilities,

the totality of the present circumstances leads the Court to conclude that Defendant may try

anything that she can to avoid incarceration and has therefore not shown by clear and

convincing evidence that she is not a flight risk.

**CONCLUSION**

For the foregoing reasons, Defendant's motion for bail pending appeal is DENIED.

Dated: October 15, 2024
       New York, New York

SO ORDERED.

JENNIFER L. ROCHON
United States District Judge